BOUTALL, Judge.
This is an appeal by the Louisiana -Board of Alcoholic Beverage Control from an adverse decision of the trial court.
On June 2, 1971, a sworn petition was filed before the Board of Alcoholic Beverage Control, which petition called for the revocation of State Retail Liquor Permit No. 5911, issued to Doris Brumfield, d/b/a Dot’s Bar and Lounge, for an alleged violation of LSA-R.S. 26:88(8) and (3) relative to permitting a person under the age of eighteen years to work or loiter in an alcoholic beverage outlet.
The matter was tried de novo and the fore the Board, at which time the Board found that Debra Washington, a female of thirteen years of age, had worked as a “go-go” dancer in Dot’s Bar & Lounge on March 14, 1971. Accordingly, the Board decreed that permit No. 5911 be revoked.
The permittee timely filed an appeal to the Civil District Court for the Parish of Orleans for a trial de novo in accordance with LSA-R.S. 26:104, seeking a reversal of the Board’s decision.
The matter was tried do novo and the trial court reversed the decision of the Board without giving either oral or written reasons therefor and issued a permanent injunction enjoining the Board from in any manner interfering with the operation of Dot’s Bar & Lounge. From this judgment the Board of Alcoholic Beverage Control has appealed.
The Board urges to us the following specifications of error:
(1) The trial court erred in failing to find that Debra Washington, a person under the age of eighteen years, was permitted to visit in the licensed premises in violation of R.S. 26:88(3).
(2) The trial court erred in failing to find that Debra Washington, a person under the age of eighteen years, was employed on the licensed premises in violation of R.S. 26:88(8).
We shall consider these assignments of error together, because the posture of the case is such that one is essentially based upon the other, and the appellee’s contention addresses itself to the entire case.
Appellee contends that the issues presented in this suit have become moot, because the license for the year 1971 has expired, and thus a revocation would have no effect. He urges to us this principle based upon the pronouncement of the courts in the following cases: Spinato v. Lowe, 239 La. 604, 119 So.2d 480 (1960); Pellegrin v. City of Gretna, 222 La. 527, 62 So.2d 824 (1953); DiGiovanni v. Parish of Jefferson, 151 So.2d 528 (La.App. 4th Cir., 1963); Barlotta v. Jefferson Parish Council, 212 So.2d 220 (La.App. 4th Cir., 1968). We note that those cases dealt with the issuance of a permit rather than revocation of a permit, and thus it is, of course, useless to issue an order to grant the permit for a year that has already expired, when a new permit is required, and the issuance of the new permit may become the subject of litigation. However, this is not true of the case of Pellegrin v. City of Gretna, supra, which dealt with a revocation. An explanation of the ruling of that case is afforded by the court in the case of Allen v. Louisiana Board of Alcoholic Beverage Control, 141 So.2d 680 (La.App. 1st Cir., 1962). It was pointed out in that case that the Pellegrin matter appears to have been decided on its own facts without distinguishing or attempting to overrule prior jurisprudence. In Allen, the court points out that the Supreme Court in the case of Barretta v. Cocreham, 210 La. 55, 26 So.2d 286 (1946), held that an appeal should not be dismissed where it is found that the eligibility for future permits would depend upon the constitutionality of the laws under which the original permit *304 had been revoked. The court there considered that under the existing law a revocation could cause denial of permits for the following five year period and thus held that the appellant had an interest in determining whether or not the law under which the permits were revoked were constitutional. See also Breaux v. Town of Oberlin, 247 So.2d 195 (La.App. 3rd Cir., 1971).
In the Allen case there was before the court for consideration the present law containing a one year period of denial of permit due to revocation, together with a possibility that no permit may be granted to a person who had been adjudged by the board to have violated any of the provisions of chapter 1 of title 26. The court held that under the statutory provisions, the revocation of the prior years license was not a moot question. We have similarly expressed ourselves in the case of Karlsson v. City of New Orleans, 145 So.2d 659 (La.App. 4th Cir., 1962). We would distinguish between this situation wherein a revocation is at issue, which has bearing upon obtaining additional permits for ensuing years, as opposed to applications for issuance of a permit. We are of the opinion that the facts of this case parallel those of the Allen case and Karlsson case, and hold that the issue is not moot, and that we should consider the merits of the case on appeal.
In considering the merits of this case, we note that the certain fact is that Debra Washington, a girl of thirteen years of age, was found by the police in Dot’s Bar & Lounge in the early morning hours of Sunday, March 14, 1971. The police had been called to this bar between the hours of 3 :00 and 4:00 a. m. that Sunday morning to investigate a shooting which had resulted in a death. During the course of this homicide investigation, Patrolman Robert Snell of the New Orleans Police Department recognized the girl who had been previously reported as a runaway juvenile. This was Debra Washington. It is not established that the business was operating at the time. Thus the basic issue is simply under what circumstances she was there and how long she was there in order to determine what effect her presence may have in connection with the revocation of the license. The trial judge rendered no reasons for judgment, and thus we are unable to say with preciseness what caused him to conclude that her presence was not in violation of the Alcoholic Beverage Laws.
The record shows that the bar was owned and operated by Doris Brumfield, but that she had been ill for several months, and that her niece, Diane Muse, was in actual management of the place during the time in question. Diane Muse had contracted with a man named Roscoe Lepree to spin records for a record hop on Friday and Saturday nights in order to increase business at the bar. Lepree brought with him “go-go” dancers in order to stimulate the patronage. The minor Debra Washington was brought to the bar the preceding Friday night by Lepree as a go-go dancer. However, it developed that an argument occurred between Debra and another dancer as to who would dance, and as a result of the argument, the other dancer reported to Diane Muse and Betty Rouchon, one of the barmaids, that Debra was under age. They thereupon inquired as to Debra’s age and were told by Roscoe Lepree that Debra was over eighteen, and that he knew this because he lived with her, and she was pregnant by him. Debra and Roscoe left the premises and returned with some sort of unofficial identification card which was exhibited to the manager as proof of age. The manager thereupon announced that, although she believed Debra to be of age, she would not permit Debra to dance thereafter and Debra apparently never danced since the occasion.
Considering these facts, it appears that the decision of the trial judge that Debra was not employed by the licensee on the night in question was warranted. *305 However, there remains the equally important issue of whether she was permitted to loiter on the premises.
The testimony of the barmaid is to the effect that she saw Debra come into the lounge sometime around 10:15 p. m. Saturday night, while Lepree was spinning his records. We are not informed as to her whereabouts or activities from that time until the shooting incident after 3 :00 a. m. Sunday morning. There is no evidence that she engaged in dancing or even stayed on the premises, and except for the one statement of the barmaid, no evidence that Debra had been in the place prior to that time. The testimony of Diane Muse shows she was there when the police were called but not before. The record does not disclose what Debra might have been doing in the place at the time the police arrived. We are forced to speculate that Debra could have loitered in the place all the time Lepree was there, but we can just as easily conclude that she came by to accompany him home at the conclusion of his work, and remained at the scene because of the shooting incident. This unsatisfactory state of the evidence arises because Debra ran away from home again later, and her whereabouts, as well as that of Lepree, were unknown at the time of trial.
Based upon the evidence the trial judge could have concluded that Debra had not been permitted to loiter on the premises but was only there accidentally because everyone remained in the place awaiting the police. However, since he gave no reasons for judgment, we feel compelled to examine the other aspect of the defense presented, that is, that the permittee did not knowingly permit a minor to loiter on the premises.
The Board asserts to us that lack of knowledge of the age of the minor, after reasonable effort has been made to determine age, is not a defense, citing Thibodeaux v. City of Sulphur, 140 So.2d 49 (La.App. 3rd Cir., 1962). We note that reliance was there placed mainly upon State v. Emerson, 233 La. 885, 98 So.2d 225 (1957), purporting to hold that conviction was affirmed in spite of the fact that the defendant made a reasonable effort to determine the age of the minors therein. The Supreme Court in Emerson made no such determination and we cannot bring ourselves to say that the following is a reasonable effort:
“ * * * . that both of these minors had the appearance of being over 18 because of their height and weight, which are specifically set forth; that both shaved regularly; that the accused asked one of these minors his age, and he replied that he was ‘old enough to sleep by himself’; * * 98 So.2d at, 227.
On the same basis we agree that the effort to determine age in Thibodeaux did not constitute a reasonable effort, that is, to accept as valid an I.D. card which, on its face, did not describe the person presenting it. We believe that such a defense can be made and is dependent on the facts and circumstances peculiar to each case. We note the court in the case of Wimberly v. White, 54 So.2d 869 (La.App. 1st Cir., 1951) made inquiry into the facts of knowledge of age concerning the alleged loitering of and sale of liquor to a 16 year old boy in the licensed premises. Unless such inquiries are permissible under the Alcoholic Beverage Control Law, any per-mittee, no matter how innocent or law abiding he may be, could present no defense and face forfeiture of his permit, the minute a minor crossed his threshold.
There is ample evidence in the record to prove that Debra did not appear to be the age she actually was. She was described by her mother, .Velma Washington, as being matured, five feet, seven inches tall and weighing 150 pounds. Additionally, both of the arresting officers testified in court that Debra looked to be well in excess of 18 years of age. The manager and the barmaid both testified that Debra appeared to them to be a mature woman and well above the legal age, and testified that *306 because of her appearance it did not occur to them that there could he serious objection to the identification furnished them that is, the statement of Lepree who is an adult, together with the identification card presented by Lepree and Debra when requested. The manager could validly assume that Lepree would be cognizant of the laws involved, and would not do or say anything which would jeopardize his own liberty. His statements were such that, if the true age of Debra was established that he was not only in violation of the Alcoholic Beverage Laws, but also in jeopardy of the criminal laws of this state relating to contributing to the delinquency of a juvenile as well as carnal knowledge of a juvenile.
Under the particular circumstances of this case, where inquiry as to age was made and employment of the minor as a dancer stopped, where there was a relationship between the minor and the record player Lepree, where the evidence does not show how long the minor was present or what she was doing on the premises, we cannot say that the trial judge erred in his judgment. Certainly we can find no violation of LSA-R.S. 26:88(8) relative to employment of a minor. The question of violation of LSA-R.S. 26:88(3) relative to loitering is a close one. However, we cannot disturb the ruling of the trial judge unless it is manifestly erroneous and we find no such error here.
The Board complains of the reversal of its decision by the trial court. The obvious reason for this is the almost complete change of witnesses and evidence presented in the trial de novo before the trial court as opposed to the hearing before the Board. It is apparent that, despite the best efforts on its part, the disappearance of several witnesses hampered its effort to produce satisfactory evidence to support a finding of violation on the trial de novo. This we are powerless to prevent.
For the foregoing reasons, the judgment of the trial court is affirmed.
Affirmed.
LEMMON, J., dissenting with written reasons.