322 So.2d 333 (1975)
John G. DeFRANCIS, Jr., Plaintiff-Appellant,
v.
The CITY OF BOSSIER, Defendant-Appellee.
No. 12727.
Court of Appeal of Louisiana, Second Circuit.
November 6, 1975.
Rehearing Denied December 9, 1975.
Writ Refused January 30, 1976.
*334 Kelly, Seaman & Ware, by Donald G. Kelly, Natchitoches, Goff, Goff & Levy by A. K. Goff, III, Ruston, for plaintiff-appellant.
Steven G. McKenzie, Bossier City, for defendant-appellee.
Before PRICE, HALL and BURGESS, JJ.
BURGESS, Judge.
John G. DeFrancis, Jr., appeals from a judgment of the district court affirming a decision of the City Council of Bossier City, Louisiana, which had ordered petitioner's retail liquor permits suspended for alleged violations of the Bossier City "B drinking" ordinance.
The violations for which DeFrancis was charged occurred November 2, 1974, and petitioner was notified that a hearing would be held by the City Council of Bossier City on Monday, December 30, 1974, regarding the possible supension or revocation of petitioner's liquor permits.
Causes for suspension were set forth in separate letters dated December 17, 1974, and mailed to plaintiff. Regarding permit number 2696 issued to DeFrancis d/b/a Fountain Lounge, the causes for revocation or suspension are stated as follows:
"a. Violation of the provisions of Section 5-7(7) of the Code of Ordinances of Bossier City, Louisiana by employing or permitting females to engage in `B Drinking', to-wit: Joan West on November 2, 1974.
"b. Violation of the provisions of Section 5-31(7) of the Code of Ordinances of Bossier City, Louisiana in violating the above mentioned section."
The letter dealing with revocation of permit number 2697 issued to DeFrancis d/b/a Black Knight Lounge, states the causes for revocation or suspension as follows:
"a. Violation of the provisions of Section 5-7(7) of the Code of Ordinances of Bossier City, Louisiana by employing or permitting females to engage in `B Drinking', to-wit: Nina Oden on November 2, 1974.
"b. Violation of the provisions of Section 5-31(7) of the Code of Ordinances of Bossier City, Louisiana in violating the above mentioned section."
The hearing was had on the specified date and the council ordered that 1974 city liquor permits numbered 2697 and 2696 held by DeFrancis d/b/a Black Knight Lounge, Incorporated, and d/b/a Fountain Lounge, Incorporated, be suspended for a period of 15 days effective the first day of January, 1975, for one violation and for a period of 15 days effective the 16th day of January, 1975, for the other violation.
In accordance with the procedure provided by Louisiana Revised Statutes 26:104, plaintiff filed in the district court a petition *335 for devolutive appeal, alleging that improper notice was given him of the hearing because the wrong sections of the city ordinance were set forth in the attached letters; that the action of the City Council was incorrect and illegal and based upon the Bossier City ordinances which are unconstitutional. Plaintiff also asked for and was granted a stay order pending the appeal.
The matter was tried de novo in the district court at which time testimony was given by police officers concerning the alleged "B Drinking" violations occurring at both the Black Knight Lounge and the Fountain Lounge, for which plaintiff had 1974 liquor permits. Plaintiff introduced no rebuttal to this testimony.
In written reasons for judgment the district judge recited what was designated as Section 5-7(7) of the Code of Ordinances of Bossier City, Louisiana:
"No person holding a retail dealer's permit under this chapter and no alcoholic beverage handling employee shall do or permit to be done any of the following acts on or about the premises covered by such permit:
* * * * * *
"(7) Employ or permit females, commonly known as B-Girls, to frequent the premises and solict patrons for drinks or to accept drinks from patrons and receive therefor any commission or any remuneration in any other way."
The district judge held that the ordinance under consideration was not unconstitutional but was a valid exercise of police power, citing Burnette v. Louisiana Board of Alcoholic Beverage Control, La.App., 252 So.2d 346 and Nichols v. Louisiana Board of Alcoholic Beverage Control, La. App., 257 So.2d 484.
He further found the evidence adduced at the trial de novo "conclusively establishes that employees of the petitioner, namely Joan West and Nina Oden, did solicit drinks in violation of the above quoted ordinance,", and that petitioner's actual knowledge of the proscribed acts was not required, again citing Burnette, supra. He ordered the decision of the City Council of Bossier City relative to the suspensions be affirmed, said suspensions to begin effective ten days from the signing of the judgment, which was signed February 11, 1975. Petitioner perfected his appeal from this judgment on February 14, 1975, and obtained an order from the Louisiana Supreme Court staying execution of the suspension pending the finality of the appeal to this court.
On appeal plaintiff assigns the following errors:
1. The trial court erred and abused its discretion in affirming the suspension of a 1974 retail liquor permit in the calendar year of 1975, which in fact presented a moot issue.
2. The judgment of the district court is erroneous in that it upholds the constitutionality of the ordinance of the City of Bossier City prohibiting and criminalizing innocent activities, i. e., a female employee of a retail liquor licensee soliciting from a patron a "drink" for herself.
Plaintiff contends it is evident from the record the orders of suspension deal with two 1974 liquor permits which by statute expired December 31, 1974. He argues that as a consequence the court is without authority to suspend the 1974 permits during 1975 for a violation occurring in 1974, and that the appeal presents a moot question.
With regard to the issue of the correctness of the action suspending the permit, the trial judge has, in his reasons for judgment, made reference to Louisiana Revised Statutes 26:88, which sets forth numerous acts prohibited on premises licensed to sell beverages of high alcoholic *336 content and the penalty for violations, as follows:
"No person holding a retail dealer's permit and no agent, associate, employee, representative, or servant of any such person shall do or permit any of the following acts to be done on or about the licensed premises:
* * * * * *
"(8) Employ or permit females, commonly known as B Girls to solicit patrons for drinks.
"Violation of this Section by a retail dealer's agent, associate, employee, representative or servant shall be considered the retail dealer's act for purposes of suspension or revocation of a permit.
"Violation of this Section is punishable as provided in R.S. 26:191 and is also sufficient cause for the suspension or revocation of a permit.
"Notwithstanding the issuance of a permit by way of renewal, the commissioner of alcoholic beverage control may revoke or suspend such permit, as prescribed by this Chapter, for violations of this Section occurring during the permit period immediately preceding the issuance of such permit." (Emphasis added)
Under the provisions of La.R.S. 33:4785, any municipality may suspend or revoke within the corporate limits permits issued to retail dealers in beverages having an alcoholic content of more than six per cent by volume for causes set forth in R.S. 26:88 and 26:89.
Since the determination by the trial court that plaintiff violated the provisions of the ordinance is uncontested, we will consider first whether the appeal in fact presents a moot issue. This issue is in reality two-fold: Can the municipal authorities enforce the suspension of a liquor permit in 1975 for violations occurring while the licensee was operating the business under a 1974 permit; if not, does there exist a valid reason for passing on the legality of the suspensions?
The last paragraph of La.R.S. 26:88, quoted supra, permits enforcement of the suspension for violations of that section occurring during the permit period immediately preceding the issuance of such (renewal) permit, and R.S. 33:4785 authorizes the governing authority of a municipality to suspend or revoke within the corporate limits liquor permits issued by it for "causes set forth in R.S. 26:88." Thus, it appears that the suspensions, if affirmed, may be enforced against DeFrancis as to any liquor licenses under which he may be operating in Bossier City in 1975.
If these suspensions are unenforceable for the reason plaintiff has no current liquor permit or permits in Bossier City, we think it is nevertheless proper for us to determine the validity of the suspensions since such a determination could affect the issuance or denial of a permit to DeFrancis in subsequent years. Louisiana R.S. 26:79 sets forth the qualifications of applicants for permits and requires that applicants for state and local permits of all kinds shall meet the following qualifications and conditions:
"* * * * * *
"(6) Has not had a license or permit to sell or deal in alcoholic beverages, issued by the United States, any state, or by any political subdivision of a state authorized to issue permits or licenses, revoked within one year prior to the application,. . ..
"(7) Has not been adjudged by the board or convicted by a court of violating any of the provisions of this Chapter."
Since adjudication that a licensee is guilty of violating any provision of R.S. 26:88 (i. e., B-Girls) is ground for suspension or revocation, the affirmance of the *337 suspensions could have a direct effect on DeFrancis' ability to obtain a renewal permit.
In Allen v. Louisiana Board of Alcoholic Beverage Control, 141 So.2d 680 (La. App. 1st Cir. 1962), the court, after an exhaustive review of the question, held:
"In the case at bar, while the notice for the hearing only mentioned the 1961 licenses and permits, LSA-R.S. 26:79(A) (6) and (7) specifically state that no permit may be granted to a person who has had a permit revoked within one year prior to the application and that no permit may be granted to a person who has been adjudged by the Board to have violated any of the provisions of Chapter 1 of Title 26. Under the statutory provisions, the revocation of plaintiff-appellee's 1961 license is not a moot question." (Emphasis added)
See also Brumfield v. Louisiana Board of Alcoholic Beverage Control, 265 So.2d 302 (La.App. 4th Cir. 1972), in which the court held, following the Allen decision, that the appeal from a reversal of a revocation of a liquor permit was not rendered moot by expiration of the permit where correctness of the revocation would have a bearing on subsequent permits.
We consider next the question of the constitutionality of the "B-drinking" ordinance and statute. Appellant does not deny the right of the State of Louisiana or a municipal subdivision thereof to regulate various business activities under its police power. However, he urges that such regulation must be tempered with reason and that the statute and ordinance relative to "B Girls" denies equal protection to the female sex and discriminates against females, since neither the ordinance nor the statute applies to males who might be employed on the premises. DeFrancis argues that any classification on the basis of sex is inherently suspect and must be subjected to strict judicial scrutiny. Under this analysis, the state must show a compelling state interest in differentiating between the sexes. He cites as authority for this contention the case of Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), and the following language in particular:
"With these considerations in mind, we can only conclude that classifications based upon sex, like classifications based upon race, alienage, or national origin, are inherently suspect, and must therefore be subjected to strict judicial scrutiny. Applying the analysis mandated by that stricter standard of review, it is clear that the statutory scheme now before us is constitutionally invalid."
We note Frontiero is not conclusive authority for appellant's contention that sex is a suspect classification subject to strict judicial scrutiny, as a majority of the court did not subscribe to that statement of law quoted above.
It has long been recognized that the state, and its subdivisions, acting under legislative grants of authority and in the exercise of its inherent police power, may regulate the sale of intoxicating liquors. Although intoxicating liquors and traffic therein, where permitted or tolerated, are as lawful as any other property or business and as fully entitled to protection, yet the liquor traffic is admittedly dangerous to public health, safety, and morals and is therefore essentially within, and its regulation or prohibition is fully justified under, the police power. See 45 Am.Jur.2d, Intoxicating Liquors, Section 23 and cases cited thereunder.
In Burnette, supra, a licensee's liquor permit was suspended for seven days and he appealed attacking the constitutionality of La.R.S. 26:88(8), formerly (7), on the grounds that the statute was discriminatory as to the appellant and alleged "B girls" as compared with other entertainers. The court, without further discussion, held the statute "on its face is not discriminatory, and appellant has offered no evidence that *338 it has been so applied", and, therefore, found appellant had not been denied equal protection of the law.
We find the ordinance in question does not have the effect of forcing DeFrancis to discriminate between hiring females as employees to perform any of the jobs ordinarily performed by males in the operation of his business. The ordinance merely operates to regulate certain activities of all persons holding liquor licenses in Bossier City by prohibiting licensees from permitting females to "solicit" from patrons the purchasing of drinks. By the provisions of R.S. 26:88(8), this prohibition applies to all persons licensed by the state to dispense alcoholic beverages of high alcoholic content.
In a recent decision the Louisiana Supreme Court, in State of Louisiana v. Devall, 302 So.2d 909 (La.1974), upheld the state's prostitution statute which defined the crime as "the practice by a female of indiscriminate sexual intercourse with males for compensation." A woman charged with prostitution had attacked the statute as being unconstitutional since it denied her the equal protection of the laws. The Supreme Court in discussing the "equal protection" concept stated:
". . . the guarantee of equal protection of the laws means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons in like circumstances.
* * * * * *
". . . However, in matters in which sex is a material factor, a statute may make a distinction without violating the constitutional guarantee, if the classification is a natural and reasonable one."
The court then considered Devall's argument that the prostitution statute denied her the equal protection of the laws and stated:
"With this bare record the court is called upon to presume that the purpose of the legislature in enacting the controverted statute was for some legitimate state purpose, and that the method chosen was relevant to the achievement of that purpose. However, given this presumption, the contention is that the classification in the Act is irrational, for the objects and purposes of the legislation could have been achieved just as well by making it a crime for men to engage in indiscriminate sexual intercourse for compensation. To make such conduct criminal when engaged in by women only, defendant argues, is the type legislative choice forbidden by the Equal Protection Clause.
"To sustain this contention we must assume that the classification implicit in the statute is unreasonable. But this we may not do. The burden is upon the person claiming that the classification is unreasonable and irrational to support that contention with facts which will overcome the presumption of constitutionality.
"Only argument is advanced to support defendant's contention. It is argued that male prostitution is prevalent and constitutes a social evil detrimental to the public welfare just as does female prostitution. Aside from the fact that this record does not support the facts upon which this contention rests, there is nothing upon which this Court can rely to conclude that male prostitution is a social problem of any importance. A court may not suppose that male prostitution is a problem of such significance that the legislature should proscribe the practice as a crime. The Constitution does not and should not require the legislature, before attempting to regulate an existing practice which is detrimental to the public welfare, to regulate a practice which is not."
The Supreme Court's reasoning is applicable to the case before us. Statutes are presumed to be constitutional.
*339 The legislature may make classifications based upon sex where the classification is rationally related to the achievement of a legitimate state purpose. The burden of proving that the legislature's classification is irrational and arbitrary rests squarely on the party challenging the constitutionality of the statute. Other than allegations made in brief, appellant has not shown that solicitation of drinks by males constitutes a social evil of any significance. Therefore, the classification along sex lines in this case is not irrational or arbitrary. "The Constitution does not and should not require the legislature, before attempting to regulate an existing practice which is detrimental to the public welfare, to regulate a practice which is not." Devall, supra.
From our study of the circumstances in the instant case and the application of the ordinance to activities of the plaintiff licensee, we find he has not been discriminated against by the actions of the council in enforcing the city ordinance or the state statute. We further find, in view of the Louisiana Supreme Court decision in Devall, that the ordinance and statute here in question are not violative of any provisions of the Constitution of the United States or of the State of Louisiana.
Accordingly, the judgment of the lower court is affirmed and it is ordered that the two city retail liquor permits for the year 1974, in the name of John G. DeFrancis, Jr., listed as Permit No. 2696, Fountain Lounge, Inc., and Permit No. 2697, Black Knight Lounge, Inc., and any operating privileges under any existing permits which he may hold in the City of Bossier City be suspended for a period of 30 days, such suspension to become effective within ten days from the date this judgment becomes final.
All costs of these proceedings, including the costs of appeal, are assessed against appellant.