**James Edward JACK, Appellant,**

v.

**James Harry JACK, Appellee.**

No. 05–89–01454–CV.

Court of Appeals of Texas, Dallas.

Aug. 28, 1990.

Rehearing Denied Oct. 18, 1990.

Ann Crawford McClure, El Paso, for appellant.

James Harry Jack, Maitland, Fla., for appellee.

Before HOWELL, KINKEADE and BURNETT, JJ.

### OPINION

BURNETT, Justice.

James Edward Jack ("Edward") appeals from the trial court's order dismissing his suit to rebut the presumption that James Harry Jack ("Harry") is the father of J— C— J— ("Child"). The trial court, in dismissing Edward's claim, determined that a divorce decree between Harry and the Child's mother, Hollis Jude O'Brien Jack ("Hollis"), which named the Child as a child of their marriage, was res judicata on the issue of paternity and prevented any subsequent litigation on the matter. In two points of error, Edward contends that: (1) the trial court erred in dismissing his suit on the theory that the divorce decree was res judicata on the matter of paternity; and (2) section 12.06 of the Texas Family Code is unconstitutional because it denies him procedural and substantive due process of law and violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and article 1, section 3, of the Texas Constitution. We affirm the trial court's judgment.

The relationships in this case are somewhat complex. Edward's father is Harry; Edward's mother is a woman other than Hollis. When Harry and Hollis married, Hollis became Edward's stepmother. In his suit, Edward alleged that he had an affair with Hollis during her marriage to Harry, and that Edward is the biological father of the Child born to Hollis on January 11, 1980. Harry and Hollis divorced on July 26, 1982. The divorce decree named two children of the marriage, including the Child whose paternity is in issue in this case. On January 1, 1983, Edward married Hollis. They subsequently divorced in 1987. In 1989, Edward brought his claim requesting that the trial court enter an order rebutting the presumption that Harry is the father of the Child and establishing that Edward is the biological father of the Child.

### RES JUDICATA

■ In his first point of error, Edward contends that the trial court erred in dismissing his suit on the grounds that the divorce decree, by naming the Child as a child of the marriage of Harry and Hollis, was res judicata to any subsequent litigation on the issue of paternity. Specifically, Edward argues that he was a "stranger" to the divorce proceedings. Edward also contends that he did not have an opportunity to challenge the presumption that Harry was the father of the Child, because at the time of Harry and Hollis' divorce in 1982, the applicable statutes precluded him from challenging the presumption.

■ In order to prevent a multiplicity of litigation involving a single issue, it is well established that a party who has litigated or has an opportunity to litigate a matter in a previous action should not be permitted to litigate the issue again. The doctrine of res judicata holds that an existing final judgment rendered upon the mer-

its by a court of competent jurisdiction is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies. *Abbott Laboratories v. Gravis,* 470 S.W.2d 639, 642 (Tex.1971). It is also well established that the doctrine of res judicata does not operate to affect "strangers" to a judgment. *Abbott Laboratories,* 470 S.W.2d at 642. For Edward's claim to now be barred by the 1982 divorce decree, Edward must have had an opportunity to participate in or must have somehow been a part of the divorce proceedings. The statutes in effect at the time of the divorce did not afford Edward, Hollis, or Harry an opportunity to attempt to rebut the presumption that Harry was the father of the Child. In 1983, the legislature added section 12.06 to the Family Code [1] to allow a presumptive father the right to deny paternity. Act of May 30, 1983, ch. 424, § 7, 1983 Tex.Gen.Laws 2355. In 1987, the legislature amended section 12.06 to afford the mother the right to deny her husband's paternity. Act of May 26, 1987, ch. 689, § 5, 1987 Tex.Gen.Laws 2548. Also, nothing in the record indicates that Edward participated in the divorce proceedings or had any influence on the final divorce decree. Neither the fact that Hollis was Edward's stepmother nor that Edward married her less than six months after her divorce from Harry, the presumed father, establishes privity between Edward and Hollis. Thus, we agree with Edward that the divorce decree naming the Child as a child of the marriage is not res judicata to Edward's challenge to Harry's presumed paternity. However, because section 12.06 allows only a mother and the presumed father to rebut the presumption, Edward still lacks any means to challenge the presumption. He must now show that he has a constitutional right to make such a challenge.

## CONSTITUTIONALITY OF SECTION 12.06

In his second point of error, Edward contends that section 12.06 of the Family Code, by not allowing him an opportunity to rebut the marital presumption, is unconstitutional because it: (1) denies him procedural and substantive due process, and (2) violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and article 1, section 3, of the Texas Constitution. This point presents the novel question in Texas of whether a man claiming to be the biological father of a child born to a married woman has a right to challenge the presumption that the mother's husband is the father of the child, when the mother and the presumptive father have divorced.

The presumption that a mother's husband is the father of all children born during the marriage was first pronounced in 1777 and has been widely accepted. Known as Lord Mansfield's Rule, it was a rule "founded in decency, morality, and policy, that [the husband and mother] shall not be permitted to say after marriage, that they had no connection, and therefore that the offspring is spurious...." *Goodnight v. Moss,* 98 Eng.Rep. 1257, 1258 (1777). Texas courts have accepted Lord Mansfield's Rule as the law of the State. *See, e.g., Adams v. Adams,* 456 S.W.2d 222, 224 (Tex.Civ.App.—Houston [1st Dist.] 1970, no writ); *Barnett v. Barnett,* 451 S.W.2d 939, 940–41 (Tex.Civ.App.—Beaumont 1970, writ dism'd); *Longoria v. Longoria,* 168 Tex.Crim. 130, 324 S.W.2d 244, 247 (Tex.Civ.App.—San Antonio), *writ dism'd,* 160 Tex. 134, 327 S.W.2d 453 (1959). In 1975, the Texas Supreme Court modified Lord Mansfield's Rule to allow the husband or mother to testify to the husband's nonaccess, impotence or sterility. *Davis v. Davis,* 521 S.W.2d 603, 608 (Tex. 1975). While the law today remains that a man is presumed to be the biological father of a child if he and the child's mother were married at the time that the child was born, section 12.06 now provides that a *husband* or *mother* is entitled to deny the husband's presumptive paternity. Tex.Fam.Code Ann. § 12.06 (Vernon Supp.1990). Nowhere in the Family Code did the legislature provide any means for a man alleging to be the biological father of a child born during a

---

**1.** Hereinafter referred to as section 12.06.

marriage to rebut the presumption that the husband is the father of a child. *Cf.* TEX. FAM.CODE ANN. § 13.01 (Vernon Supp.1990) (paternity suit brought only for "child who has no presumed father").

### 1. DUE PROCESS

Edward first contends that section 12.06 is unconstitutional because it violates his due process rights. Before a statute may be found to violate an individual's rights under the due process clause, it must first be determined whether the individual has an interest worthy of constitutional protection. The constitutionally cognizable interest which Edward contends he has is the right of parenthood existing through his biological relationship with the Child. Edward argues that, because section 12.06 does not provide him with a mechanism to challenge the presumption that Harry is the father of the Child and establish himself as the father, he is deprived of this constitutionally protected right without due process of law.

#### A. *Procedural Due Process*

In a procedural due process claim, a person must show a deprivation of "life, liberty or property without due process of law." *Spring Branch I.S.D. v. Stamos,* 695 S.W.2d 556, 560 (Tex.1985), *appeal dism'd,* 475 U.S. 1001, 106 S.Ct. 1170, 89 L.Ed.2d 290 (1986); *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 896, 47 L.Ed.2d 18 (1976). If a life, liberty or property interest is at stake, the individual has a right to notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews,* 424 U.S. at 332, 96 S.Ct. at 901. However, it is only when one of these protected interests is to be impaired that the state owes the individual this type of process. The protected interest which Edward contends that he was deprived of is his "liberty" interest of parenthood and the relationship with the Child.

In attempting to show that he has a constitutionally cognizable interest, Edward refers us to four United States Supreme Court cases involving a father's interest in a child born to an unwed mother— *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983), *Caban v. Mohammed,* 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979), *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), and *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). He contends that these cases support the view that a biological father has a constitutionally recognized interest in the relationship with his child. Edward also attempts to distinguish the Supreme Court's recent plurality opinion in *Michael H. v. Gerald D.,* — U.S. ——, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989). In *Michael H.,* four justices considered a California statutorily created presumption that a child born to a married woman living with her husband is the child of the marriage, if the husband is not impotent or sterile. They held that this statute did not violate the due process rights of an alleged biological father because the alleged biological father did not have a constitutionally protected interest in his parental relationship with the child. Edward contends that this Court should find that Edward's interest is constitutionally protected because: (1) the United States Supreme Court has recognized a father's liberty interest in cases in which the mother is not married, and (2) the Supreme Court's recent decision in *Michael H.* is distinguishable from the case before us because Hollis and Harry have divorced.

In *Michael H.,* the plurality held that to be a constitutionally protected interest, the interest must be not only "fundamental," but also be an interest that is "traditionally protected by our society." *Michael H.,* 109 S.Ct. at 2341. The plurality, in denying that the alleged father had such an interest, stated that "our traditions have protected the marital family ... against the sort of claim the [alleged father] asserts." *Michael H.,* 109 S.Ct. at 2342.

Edward makes similar arguments and relies on the same cases as those presented to the Supreme Court by the alleged father in *Michael H.* Justice Scalia, writing for the plurality, addressed the arguments and distinguished the cases:

[Alleged father] reads the landmark case of *Stanley,* and the subsequent cases of *Quilloin, Caban,* and *Lehr* as establishing that a liberty interest is created by biological fatherhood plus an established parental relationship—factors that exist in the present case as well. We think that distorts the rationale of those cases. As we view them, they rest not upon such isolated factors but upon historic respect—indeed, sanctity would not be too strong a term—traditionally accorded to the relationships that develop within the unitary family.[2]

*Michael H.,* 109 S.Ct. at 2342 (citations omitted).

Admittedly, the case before us is different from *Michael H.* because Harry and Hollis have divorced. Edward contends that when a divorce of the mother and presumed father occurs, the liberty interests recognized by the Supreme Court in the unwed mother cases (*Lehr, Caban, Quilloin* and *Stanley* ) should be "revived" because any concerns about the family unit are eliminated since the family unit is destroyed by the divorce. We disagree. First, we do not recognize that a man alleging to be the father of a child born into a marriage has a constitutionally protected interest which would enable him to challenge the presumption that the wife's husband is the father of the child. Nor do we recognize that the husband's presumed paternity should suddenly become rebuttable by any man merely because the mother and presumed father have divorced.

### B. *Substantive Due Process*

 Edward also contends that section 12.06 violates his right to substantive due process. To be upheld, a statute must only be rationally related to its means, unless a fundamental right or interest is involved. *Moore v. City of East Cleveland,* 431 U.S. 494, 499–500, 97 S.Ct. 1932, 1935–36, 52 L.Ed.2d 531 (1977); *Mass. Indem. & Life v. Tex. State Bd. of Ins.,* 685 S.W.2d 104, 114 (Tex.App.—Austin 1985, no writ); *In the Interest of B— M— N—,* 570 S.W.2d 493, 503 (Tex.Civ.App.—Texarkana 1978, no writ). If a fundamental right or interest exists, then the judicial scrutiny will be strict. *See* R. ROTUNDA, J. NOWAK & J. YOUNG, CONSTITUTIONAL LAW, SUBSTANCE AND PROCEDURE § 15.7 (1986); *Boddie v. Connecticut,* 401 U.S. 371, 381–82, 91 S.Ct. 780, 788, 28 L.Ed.2d 113 (1971); *Loving v. Commonwealth of America,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967). "Fundamental rights" or interests are those expressly guaranteed in the United States or state constitutions or are in some manner traceable to the constitutions, or those that the court feels are preservative of other basic civil and political rights. *Spring Branch I.S.D.,* 695 S.W.2d at 560; *In re Estate of Touring,* 775 S.W.2d 39, 42 (Tex.App.—Houston [14th Dist.] 1989, no writ); *Retail Merchants Ass'n of Houston, Inc. v. Handy Dan Hardware, Inc.,* 696 S.W.2d 44, 51 (Tex.App.—Houston [1st Dist.] 1985, no writ). Edward contends that he has a fundamental interest in his relationship with his child. This contention is essentially the same one that he made in asserting that his right to procedural due process had been violated. We hold that his asserted interest is not a fundamental interest. His interest is not a right that is expressly or impliedly guaranteed by either the United States or Texas Constitution.[3]

**2.** In a footnote to this sentence, Justice Scalia added,

> The family unit accorded traditional respect in our society, which we have referred to as the "unitary family," is typified, of course, by the marital family, but also includes the household of unmarried parents and their children. Perhaps the concept can be expanded even beyond this, but it will bear no resemblance to traditionally respected relationships—and will thus cease to have any constitutional significance—if it is stretched so far as to include the relationship established between a married woman, her lover and their child, during a three-month sojourn in St. Thomas, or during a subsequent 8 month period when, if he happened to be in Los Angeles, he stayed with her and the child.

*Michael H.,* 109 S.Ct. at 2342 n. 3.

**3.** The United States Supreme Court has identified certain rights as being fundamental. *See, e.g., Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right to interstate travel); *Harper v. Virginia State Bd. of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (right to vote); *NAACP v. Alabama,* 357

Because Edward's interest is not a fundamental one, there must only be a showing that the purpose of the restriction is rationally related to its means. By limiting the right to challenge paternity to the mother or presumed father, the legislature has attempted to protect children of the marriage from various possible harmful effects, including confusion about parentage, the long-lasting stigma of being involved in such a claim, and torn affection. We overrule Edward's due process challenges.

## 2. EQUAL PROTECTION

■■■■ Edward also contends that section 12.06 violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and article 1, section 3, of the Texas Constitution. The first determination that we must make in the context of an equal protection analysis is the appropriate standard of review. If a classification infringes upon a fundamental right or burdens a suspect class, it is subject to strict scrutiny—meaning the state must show the classification promotes a compelling state interest. *Shapiro v. Thompson*, 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969); *Littlefield v. Hays*, 609 S.W.2d 627, 629 (Tex.Civ. App.—Amarillo 1980, no writ). If a classification is based upon gender, the standard is whether it serves important governmental objectives and is substantially related to achievement of those objectives. *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976); *Lehr v. Robertson*, 463 U.S. at 266, 103 S.Ct. at 2996. If the classification does not involve a fundamental right or a suspect class and it is not based upon gender, then our appropriate standard of review is whether the classification is reasonable, not arbitrary, and bears a rational relationship to a legitimate state objective. *San Antonio I.S.D. v. Rodriguez*, 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973); *Spring Branch I.S.D.*, 695 S.W.2d at 559. As discussed above, we do not consider Edward's interest to be fundamental. Nor do we find the

classification of men in Edward's position to be a suspect class.

■■■■ The determination of whether the classification is based on gender is closer. Section 12.06 precludes a man other than the mother's husband from rebutting the presumption that the mother's husband is the father of a child born during their marriage. While alleged biological fathers are precluded from rebutting the presumption, mothers are not. However, section 12.06 allows the presumed father to rebut the presumption. We find that this classification is not gender-based; it is marriage-based. The classification distinguishes between those included and those excluded from the family unit.

■■■■ The appropriate standard of review, then, is whether the classification is reasonable and bears a rational relationship to a legitimate state objective. As stated above, the classification is rationally related to protecting the child. Also, assuming that the classification is based on gender, we still would find that the classification is proper in that it is substantially related to the important state objective of protecting the child. We do not find that the classification violates Edward's equal protection guaranties found in either the United States or Texas Constitution. Thus, we overrule Edward's second point of error.

■■■■ Although we determined that Edward's claim is not barred by the divorce decree, he still is without a means to rebut the marital presumption. Because section 12.06 does not allow a person in Edward's position to rebut the presumption, his claim may not succeed. The trial court could have dismissed his claim on this ground. It is the law in Texas that, even though a trial court gives an incorrect reason for its judgment, we must still affirm the judgment if it can be upheld on any legal theory. *Guaranty County Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex.1986); *Curry v. Clayton*, 715 S.W.2d 77, 80 (Tex.App.—

U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)

(freedom of association).

Dallas 1986, no writ). Accordingly, we affirm the trial court's judgment.