Edward Troy **SMITH**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–92–01063–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 24, 1993.

Discretionary Review Refused March 16, 1994.

---

Terrence Gaiser, Houston, for appellant.

John B. Holmes, Jr., Ernest Davila, Michelle Stansbury, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and O'CONNOR and WILSON, JJ.

## OPINION

WILSON, Justice.

Appellant, Edward Troy Smith, was charged by information with the offense of operating a sexually oriented business without a permit. The trial court overruled his motion to quash the information. Pursuant to a plea agreement, appellant pled guilty to the charged offense and true to an enhancement paragraph. The trial court sentenced appellant to 90–days confinement and assessed a $350 fine. We affirm.

### Factual background

Appellant owned and operated the Longpoint Emporium. At the hearing on appellant's motion to quash, Houston Police Department Officer Steven Andrews testified that in February 1992, as a member of the police department's vice division, he was investigating sexually oriented businesses. On February 18, 1992, he and Officer R.E. McFarland visited the Longpoint Emporium. Officer Andrews noticed that the store was divided into three areas. He described the front of the store as a "straight" (or nonsexually oriented) area, containing old newspapers, books, and magazines, as well as some leather goods, including underwear, masks, and straps "used for bondage type things." The second area of the store contained videotapes and magazines, as well as "gel, poppers and that type of thing" in a display case. Officer Andrews counted 510 videotapes in the second area. The second area also contained the manager's station, which contained several VCR's. The VCR's were connected to a television set in the third area, described as a "viewing area," in which customers could watch the video being played. Officer Andrews described the viewing area as an unsanitary room with sofas and chairs and "various little cubbyholes." During the officers' visit, the clerk was showing a video in which a man and woman were engaged in anal intercourse.

Based on the covers of the magazines and videotapes in the second area, some of which depicted "sexual intercourse, deviate sexual intercourse, anal intercourse and oral sodomy," Officer Andrews concluded that they contained sexually explicit material and that the store was a sexually oriented business. The store did not have a sexually oriented business permit attached to the front door. After the officers arrested the store manager, they found nine rubber dildos in an opaque trash bag underneath a counter.

Sometime before February 1992, appellant had applied for a sexually oriented business permit for the store. In his application, appellant described his business as an adult video and book store. Officer Andrews testified that he investigated appellant's application, and that appellant's application was denied because the business was in a residential area and across the street from one church and 660 feet away from another.

### Enabling legislation and municipal ordinance

The legislature has found that "the unrestricted operation of certain sexually oriented businesses may be detrimental to the public health, safety, and welfare by contributing to the decline of residential and business neighborhoods and the growth of criminal activity." TEX.LOCAL GOV'T CODE ANN. § 243.001(a) (Vernon Supp.1993). The legislature has therefore authorized municipalities to adopt certain regulations regarding sexually oriented businesses. TEX.LOCAL GOV'T CODE ANN. § 243.003(a) (Vernon Supp.1993). The definition of "sexually oriented business" includes adult bookstores. TEX.LOCAL GOV'T CODE ANN. § 243.002 (Vernon Supp.1993). A municipality may restrict the location of a sexually oriented business to certain areas; such businesses may also be prohibited within a certain distance of, among other things, schools, churches, and residential neighborhoods. TEX.LOCAL GOV'T CODE ANN. § 243.006(a)(1), (2) (Vernon Supp.1993). A municipality may require that the owner or operator of a sexually oriented business obtain a permit for the operation of the business. TEX.LOCAL GOV'T CODE ANN. § 243.007(a) (Vernon Supp.1993).

Pursuant to these provisions of the Local Government Code, the city of Houston has

promulgated an ordinance governing sexually oriented businesses. The ordinance requires anyone owning, operating, or conducting any business in an "enterprise" located within the city to have a permit for the enterprise, and to post the permit at or near the enterprise's entrance. Houston Municipal Ordinance § 28.122(a), (b). The definition of "enterprise" includes "adult bookstore," which is defined in the ordinance as follows:

> An establishment whose *primary business* is the offering to customers of books, magazines, films or videotapes (whether for viewing off-premises or on-premises by use of motion picture machines or other image-producing devices), periodicals, or other printed or pictorial materials which are intended to provide sexual stimulation or sexual gratification to such customers, and which are distinguished by or characterized by an emphasis on matter depicting, describing or relating to specified sexual activities, or specified anatomical areas.

*Id.* at § 28–121 (emphasis added). The ordinance defines "specified sexual activities" and "specified anatomical areas." *Id.* The ordinance further provides that the police department *shall* issue a permit unless, among other things, the enterprise is located within 750 feet of a church, or if 75 percent of the surrounding tracts within a prescribed area are residential in character. *Id.* at § 28–125(b)(1), (3).

### Appellant's first amendment argument

In one point of error, appellant asserts the trial court erred in denying his motion to quash because "the application of the Houston city ordinance to the facts of this case prohibiting appellant from owning his bookstore and operating that business without a permit violates the appellant's right to equal protection of the law under the Fourteenth Amendment to the Constitution of the United States." Specifically, he argues that because the ordinance defines "specified anatomical areas" and "specified sexual activities," it is impermissibly directed at the content of the materials sold. He further argues that because the ordinance applies only to enterprises whose *primary* business is selling sexually oriented material, it violates the first and fourteenth amendments "by imposing a prior

restraint and criminal sanctions to enforce a content-based restriction on the geographic location of adult bookstores that sell, lease or exhibit sexually explicit material," while exempting businesses that do not deal primarily in sexually explicit material.

### 1. Content

■ Appellant asserts that "one need only look at the Ordinance's [definitions of "specified anatomical areas" and "specified sexual activities"] to see that it is the sexual content of the material offered to the public that is the target of the restrictions imposed." We think it is clear from the ordinance's title—"Sexually Oriented Businesses"—that the ordinance targets the content of the material. All written material is presumptively protected by the first amendment. *Davis v. State,* 658 S.W.2d 572, 577 (Tex.Crim.App.1983). However, an ordinance is not invalid merely because it subjects the commercial exploitation of materials protected by the first amendment to licensing or zoning requirements. *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 62, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1976); *Jolar Cinema of Houston, Inc. v. City of Houston,* 695 S.W.2d 353, 355 (Tex.App.—Houston [1st Dist.] 1985, no writ).

■ In *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), the Supreme Court considered a zoning provision that prohibited sexually oriented businesses from locating near churches, residential areas, schools, and parks. 475 U.S. at 44, 106 S.Ct. at 927. The Court held that the ordinance could be treated as content-neutral because its purpose was not to curb speech, but was, rather, to curb the secondary effects of certain businesses on the surrounding community. 475 U.S. at 47, 106 S.Ct. at 928; *SDJ, Inc. v. City of Houston,* 837 F.2d 1268, 1273 (5th Cir. 1988), *cert. denied, M.E.F. Enter., Inc. v. City of Houston,* 489 U.S. 1052, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989). The constitutionality of such ordinances is tested by the time, place, and manner of their regulation. *City of Renton,* 475 U.S. at 47, 106 S.Ct. at 928; *SDJ, Inc.,* 837 F.2d at 1273. These

time, place and manner regulations are acceptable as long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication. *City of Renton*, 475 U.S. at 47, 106 S.Ct. at 928.

A "city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect." *American Mini Theatres, Inc.*, 427 U.S. at 71, 96 S.Ct. at 2453. For this reason, ordinances similar to the one now before this Court have repeatedly been found to serve a substantial governmental interest. *See SDJ, Inc.*, 837 F.2d at 1274–75 (holding that an earlier version of the ordinance now before this Court did not violate the first amendment); *Lindsay v. Papageorgiou*, 751 S.W.2d 544, 549 (Tex.App.— Houston [1st Dist.] 1988, writ denied) (upholding Harris County regulations regarding the location of sexually oriented enterprises); *Rahmani v. State*, 748 S.W.2d 618, 622–23 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd) (upholding the city of Houston's ordinance regulating adult arcades); *Jolar Cinema*, 695 S.W.2d at 355 (upholding an earlier version of the ordinance currently before this Court). We find that this ordinance similarly serves a substantial governmental interest.

We also find that the ordinance leaves open alternative channels of communication. The ordinance does not totally ban operation of all such enterprises, and does not limit the number of such enterprises. The ordinance merely places a limit on the *locations* where such expression may be expressed. *Papageorgiou*, 751 S.W.2d at 550.

## 2. Equal protection

■ Appellant asserts that the ordinance denies him equal protection because it requires the permitting of enterprises whose primary business is offering sexually oriented material, but exempts those businesses whose activities might incidentally include the offering of sexually oriented material. We disagree.

As previously noted, the legislature has determined that the unrestricted operation of certain sexually oriented businesses may contribute to "the decline of residential and business neighborhoods and the growth of crimi-

nal activity." Tex.Local Gov't Code Ann. § 243.001(a) (Vernon Supp.1993). Additionally, in 1982, before enacting regulations on sexually oriented businesses, the city of Houston conducted a study to determine the effects of such businesses within the city. The results of this study were described by the Fifth Circuit:

> The committee conducted public hearings, studied the regulations and experiences of other cities, and concluded that sexually oriented businesses can exert a dehumanizing influence on persons attending churches and schools, can contribute to an increase in criminal activity, can contribute to the impairment of character and quality of residential neighborhoods, and, when concentrated in one area, can contribute to a decline of surrounding property.

*SDJ, Inc.*, 837 F.2d at 1272. It is clear from the city's findings that sexually oriented businesses generate undesirable secondary effects. The Fifth Circuit found that in drafting its ordinance regulating sexually oriented businesses, the city's predominant concern was with these secondary effects and not with the content of the expression itself. *Id.* at 1273.

■ If a statutory scheme infringes upon fundamental rights or interests or burdens an inherently "suspect" class, the scheme is subject to strict scrutiny, and the statutory classification must promote a compelling state interest. If, however, the statutory scheme does not involve a fundamental right or a suspect class, then the appropriate standard of review is whether the classification is reasonable, not arbitrary, and bears a reasonable relationship to a legitimate state objective. *Suber v. Ohio Medical Prod., Inc.*, 811 S.W.2d 646, 651 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *Jack v. Jack*, 796 S.W.2d 543, 550 (Tex.App.—Dallas 1990, no writ). Suspect classes are those likely to reflect deep-seated prejudice rather than legislative rationality in pursuit of a legitimate objective. *Suber*, 811 S.W.2d at 651. Owners or operators of sexually oriented businesses do not constitute a suspect class.

We note that sexually oriented materials are due less protection than other forms of expression. *SDJ, Inc.,* 837 F.2d at 1274; *see also American Mini Theatres, Inc.,* 427 U.S. at 70, 96 S.Ct. at 2452. However, we think that under either test articulated above, the ordinance in question withstands appellant's equal protection challenge. The city has a significant interest in the character and quality of its neighborhoods and the effect of sexually oriented businesses upon its populace. The ordinance currently before this Court is narrowly tailored to affect only those businesses that produce unwanted secondary effects.

We overrule appellant's point of error, and affirm the judgment of the trial court.