NO. 07-06-0291-CV


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



OCTOBER 23, 2007


______________________________



KENNETH D. SMARTT, JR., ELIZABETH JIMENEZ, XOTICAS-LAREDO, L.P., 
XOTICAS-LAREDO, INC., K. SMARTT INVESTMENTS, INC. D/B/A XOTICAS,


 Appellants

v.



THE CITY OF LAREDO, TEXAS, 



 Appellee

_________________________________



FROM THE 111TH DISTRICT COURT OF WEBB COUNTY;



NO. 2003-CVQ-001570-D2; HON. RAUL VASQUEZ, PRESIDING


_______________________________



Opinion


_______________________________



Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 This is an appeal from a permanent injunction enjoining Kenneth D. Smartt, Jr.,
Elizabeth Jimenez, Xoticas-Laredo, L.P., Xoticas-Laredo, Inc., K. Smartt Investments, Inc.
d/b/a Xoticas (collectively referred to as Smartt) from operating a sexually oriented
business in the City of Laredo (Laredo), Texas. Smartt contends that the trial court erred
in granting the injunction because 1) the business does not "fit" the definition of
"establishment" as used in the ordinance, 2) the ordinance is unconstitutional and 3)
Laredo had an adequate remedy at law. We affirm.

 Background 

 In June of 1995, Smartt began operating a business involving nude dancers
(Xoticas) outside the city limits of Laredo. In 1998, Laredo annexed the property. Four
years later, Laredo amended a previously existing ordinance to require those operating
sexually oriented businesses to obtain a license and to refrain from conducting operations
within 1000 feet of a residential area. Laredo sued for an injunction seeking to stop Smartt
from operating his business because it purportedly violated the 1000 foot restriction. A
hearing was held, and the trial court granted the relief requested. It suspended the
injunction, however, pending appeal. 

 Standard of Review 

 Whether to grant a permanent injunction lies within the discretion of the trial court;
so, on appeal, we are limited to determining whether that discretion was abused. Priest
v. Tex. Animal Health Comm'n, 780 S.W.2d 874, 875 (Tex. App.-Dallas 1989, no writ).

Issue One - Definition of Establishment 


 Smartt initially argues that the ordinance in question is not applicable because 1)
his business is "grandfathered" and 2) its operation does not fall within the meaning of
"establishment." We overrule the issue.

 As for the business being "grandfathered," we read the argument as suggesting that
because the business was in operation before the area was annexed and subject to the
zoning ordinance, it can continue to operate freely. No authority is cited in support of the
argument, however. Moreover, our own Supreme Court has held that under reasonable
conditions, zoning ordinances may be applied to end previously existing nonconforming
uses. City of University Park v. Benners, 485 S.W.2d 773, 778 (Tex. 1972); see also Baird
v. City of Melissa, 170 S.W.3d 921, 926-27 (Tex. App.-Dallas 2005, pet. denied)
(recognizing the continued existence of the rule). So, simply because Xoticas may have
been in operation before the zoning ordinances were implemented does not mean that it
is ipso facto immune from those ordinances.

 As for the argument about the business not falling within the definition of an
"establishment," we note that the ordinance makes it illegal "for any person to operate a
sexually oriented business without a valid sexually oriented business license . . . ." 
Laredo, Tex., Land Development Code ch. 18A, §4(a). The ordinance similarly prohibits
a "person [from] operat[ing] or caus[ing] to be operated a sexually oriented business within
one thousand (1000) feet of . . . a church . . . [a] public or private . . . school . . . [a]
boundary of any residential district . . . [a] public park . . ." and various other locations. Id.
§13(b). Moreover, the word "person" encompasses "an individual, proprietorship,
partnership, corporation, association, or other legal entity." Id. §2(q). In none of these
several provisions appears the term "establishment." Instead, they purport to regulate
"persons" and Smartt falls within the definition of a "person."

 To the extent that Smartt somehow relies on the word "establishment" to exclude
Xoticas from the scope of a sexually oriented business, we note that the latter is defined
as, among other things, an "adult cabaret" and "sexual encounter center." The former
includes "a nightclub, bar, restaurant, or similar establishment whose major business is  . . .
offering . . . live entertainment . . . intended to provide sexual stimulation or sexual
gratification . . . ." Id. §2(c). A "sexual encounter center" encompasses, among other
things, "a business or commercial enterprise that . . . offers for any form of consideration
. . . activities between male and female persons . . . when one or more of the persons is
in a state of nudity or is semi-nude . . . ." Id. §2(s). According to the record, Xoticas is "a
nightclub which features . . . female performers" dancing topless but with "covered nipples"
(while the other portions of the breast remain uncovered) and "bikini bottoms." Those
indicia depict both live entertainment intended to provide sexual stimulation and activities
between males and females with one being semi-nude. Consequently, evidence exists
supporting the trial court's determination that Xoticas is a sexually oriented business,
irrespective of the definition of "establishment." 

Issue Two - Constitutionality 


 In his second issue, Smartt asserts that the ordinance is unconstitutional because
1) its predecessor was found unconstitutional by another court and 2) it abridges First
Amendment protections. We again overrule the issue.

 Regarding the purported unconstitutionality of the current ordinance due to the
unconstitutionality of its predecessor, we deem the argument illogical. Simply put, the two
differ. Being different, it does not logically follow that because the first was bad, the
second is also bad. More importantly, Smartt merely glosses over, rather than explains,
why he believes the new law suffers from the same defects as the old. This alone is fatal
to the argument because he is obligated to explain his contention. He cannot leave it up
to us to develop it. Double Ace, Inc. v. Pope, 190 S.W.3d 18, 29 (Tex. App.-Amarillo
2005, no pet.).

 Regarding the purported violation of his First Amendment rights, he believes not
only that the ordinance is an invalid attempt at regulating the time, place, and manner of
sexually oriented businesses but also that it is not content neutral. We address the latter
contention first and conclude that the ordinance is content neutral, as that term has come
to be defined. Both state and federal precedent has deigned to place a "content neutral"
moniker on such laws when they can be deemed as simply regulating the time, place, and
manner of the speech or activity. See e.g., City of Renton v. Playtime Theatres, Inc., 475
U.S. 41, 47, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986); Smith v. State, 866 S.W.2d 760,
763-64 (Tex. App.-Houston [1st Dist.] 1993, pet. ref'd). So in cases involving the zoning
of sexually oriented businesses, the focus lies not upon the nature of the activity but on the
government's interest in regulating the secondary effects emanating from the activity and
the time, place and manner of the restrictions implemented. Smith v. State, 866 S.W.2d
at 763-64. With that said, we turn to the other aspect of Smartt's contention.

 That a municipality has a substantial interest in preserving the quality of urban life
is beyond dispute. Smith v. State, 866 S.W.2d at 764. Regulating the location of sexually
oriented businesses serves that interest. Id. Next, the manner in which the ordinance
regulates the activity is acceptable for it does not ban the activity in its entirety. It simply
regulates the location at which it can be conducted. And, restrictions limiting the location
to distances 1000 feet from churches and areas zoned residential have been held
constitutional. See SWZ, Inc. v. Board of Adjustment, 985 S.W.2d 268, 270-71 (Tex.
App.-Fort Worth 1999, pet. denied) (1000 feet); Lindsay v. Papageorgiou, 751 S.W.2d
544, 550 (Tex. App.-Houston [1st Dist.] 1988, writ denied) (1500 feet).

 Finally, Smartt believes aspects of the ordinance are "overly broad" and therefore
unconstitutional. The provision at issue is that referring to a "commercial enterprise," and
Smartt suggests that the constitutionality of the provision was "specifically questioned in"
a prior opinion rendered by the Fourth Court of Appeals in a case involving Smartt and
various Webb County officials. See K. Smartt Invs., Inc. v. Martinez, No.04-01-00482-CV,
2002 Tex. App. Lexis 9234 (Tex. App.-San Antonio December 31, 2002, no pet.). Yet, we
find nothing in the opinion suggesting that the phrase was unconstitutionally broad. 
Rather, the court mentioned it only in assessing whether the activities occurring within the
establishment fell within the definition of an "adult cabaret." It said nothing about the words
being overly broad or unconstitutional. So, to the extent that the argument now urged is
founded upon what the San Antonio Court of Appeals wrote in its Smartt opinion, we find
his contention is baseless. 

Issue Three - Adequate Remedy at Law 


 Lastly, Smartt contends in his third issue that Laredo was not entitled to an
injunction since Laredo had an adequate legal remedy, namely the ability to criminally
prosecute and fine offenders. We overrule the issue for the reason that both statute, Tex.
Local Gov. Code Ann. §243.010(a) (Vernon 2005) and caselaw, Schleuter v. City of Fort
Worth, 947 S.W.2d 920, 932 (Tex. App.-Fort Worth 1997, writ denied), permit cities to
seek injunctions to stop sexually oriented businesses from violating ordinances like those
at bar. So, the issue is overruled. 

 The issues raised by Smartt do not evince an abuse of discretion on the part of the
trial court. Accordingly, we affirm the judgment.

 

 Brian Quinn

 Chief Justice




riority="62" SemiHidden="false"
 UnhideWhenUsed="false" Name="Light Grid Accent 4"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-0271-CV

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL C

 

JUNE 3, 2011

 

______________________________

 

 

TEXAS DEPARTMENT OF PUBLIC SAFETY, APPELLANT

 

V.

 

RUEBEN P. ALLEN, APPELLEE

 

 

_________________________________

 

FROM THE COUNTY COURT AT LAW OF WISE COUNTY;

 

NO. CV-4750; HONORABLE MELTON D. CUDE, JUDGE

 

_______________________________

 

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION

            Following a
hearing before the State Office of Administrative Hearings, the driver's
license of Appellee, Rueben P. Allen, was suspended for 180 days.[1]  Allen appealed to the County Court at Law,[2]
which found that the decision of the Administrative Law Judge (ALJ) was not
supported by substantial evidence.  The
administrative decision was reversed and the Texas Department of Public Safety
appealed that decision to this Court.[3]  Presenting a sole issue, the Department
questions whether the trial court erred when it reversed the ALJ's finding that
the arresting officer had probable cause to believe Allen was operating a motor
vehicle in a public place while intoxicated.[4]  We reverse the trial court's judgment and render
judgment affirming the administrative decision to suspend Allen's driver's
license for 180 days.

Background Facts

            The
scant facts are derived from the record at the administrative hearing held on
February 17, 2010.  According to the record,
in the early evening on December 7, 2009, Department of Public Safety Trooper
Chris Markin was dispatched to the scene of an
accident occurring on FM 730 South, where it was reported that a pickup had
rear-ended another vehicle.  Although the
pickup left the scene of the accident, it left behind a license plate near the
point of impact.  The license plate found
at the scene was matched to a Dodge pickup which was later found abandoned with
front end damage.  Allen was identified
as the owner of that pickup.

            Allen's
wife gave a statement that he had called her to pick him up near the site of
the abandoned pickup.  She convinced him
to turn himself in, and she drove him to the Wise County Sheriff's Office.  Officers at the sheriff's office personally
observed Allen and detected an odor of an alcoholic beverage on him.  Allen denied having consumed any alcoholic
beverages that evening.   

Allen was arrested on a finding of probable
cause to believe that he had been driving while intoxicated.  He was issued a written statutory warning
requesting a blood specimen, which he refused to sign.  He was then taken to Wise County Regional
Hospital for a mandatory blood draw.  His
refusal to voluntarily give a blood specimen triggered an automatic 180-day suspension
of his driver's license.  Tex. Transp.
Code Ann. § 724.035(a)(1) (West 2011).  Upon notification of the suspension of his
license, Allen timely requested a hearing before the State Office of
Administrative Hearings under section 724.041 of the Code to contest that
suspension.

No witnesses testified at the
hearing but the Department did introduce two exhibits: (1) a four-page Peace
Officer's Sworn Report completed by Trooper Markin;
and (2) an unsigned Statutory Warning in which a blood specimen was requested
from Allen.  Following the hearing, the
ALJ issued an affirmative finding suspending Allen's driver's license.  Allen's appeal to the County Court at Law
resulted in a reversal of the ALJ's decision and the Department now challenges
that decision.  

Standard of Review

            Administrative
license decisions are reviewed under the substantial evidence standard.  Tex. Dep't of Pub. Safety v. Alford, 209 S.W.3d 101, 103 (Tex. 2006).  Under that standard, the reviewing court
cannot substitute its judgment for the judgment of the ALJ.  Mireles v. Tex. Dep't of Pub. Safety, 9 S.W.3d 128, 131 (Tex.
1999).  If the ALJ's
decision is supported by more than a scintilla of evidence, that decision must
be upheld.  Tex. Dep't of Pub. Safety v. Gilfeather, 293 S.W.3d 875, 878 (Tex.App.--Fort Worth 2009, no
pet.).  However, a
trial court may reverse an ALJ's determination under certain circumstances.[5]  

            A
court of appeals reviews the trial court's substantial evidence decision de novo. 
Id.  The issue for the reviewing court is not
whether the ALJ's decision was correct but only whether the record demonstrates
some reasonable basis for the ALJ's decision. 
Id.  The burden for overturning an agency ruling is formidable.  Tex.
Dep't of Pub. Safety
v. Pucek, 22 S.W.3d
63, 67 (Tex.App.--Corpus Christi 2000, no pet.).  

Analysis

Allen's refusal to voluntarily submit a blood specimen
implicated section 724.042 of the Texas Transportation Code.  Under that section, the Department was
required to prove by a preponderance of the evidence that:

(1) reasonable suspicion or
probable cause existed to stop or arrest the person;

(2) probable cause existed to
believe that the person was:

(A) operating a motor vehicle
in a public place while intoxicated; or

* * *

(3) the person was placed
under arrest by the officer and was requested to submit to the taking of a
specimen; and

(4) the person refused to
submit to the taking of a specimen on request of the officer.

See Tex. Transp. Code Ann. § 724.042 (West 2011).  See
also Texas Dep't of Pub. Safety v. Torres, 54 S.W.3d 438,
441 (Tex.App.--Fort Worth 2001, no pet.).

            By its sole issue, the
Department maintains the trial court erred in reversing the ALJ's
administrative decision.  We agree.  In support of its contention, the Department
argues that only probable cause to believe Allen was operating a motor vehicle
in a public place while intoxicated was necessary.  As a corollary to that argument the
Department further contends that it was not required to prove Allen was
actually driving while intoxicated.  See Partee v. Tex.
Dep't of Pub. Safety, 249 S.W.3d 495, 499 (Tex.App.--Amarillo 2007, no
pet.).  By its Reply
Brief, the Department explains that the determination whether a driver did in
fact operate a motor vehicle in a public place while intoxicated is a criminal
matter with a great burden of proof, while a license suspension is a civil
matter requiring only probable cause to believe the driver was driving while
intoxicated.  See, e.g., Kuciemba v. State, 310 S.W.3d 460, 462
(Tex.Crim.App. 2010) (noting that for evidence to be sufficient to support a
conviction for driving while intoxicated, there must be a temporal link between
the intoxication and the driving but, circumstantial evidence alone can support
the conviction).  But see Church v. State, 942 S.W.2d 139, 140 (Tex.App.--Houston
[1st Dist.] 1997, pet. ref'd) (pointing out that it was beyond the authority of
an ALJ to decide the ultimate issue of whether the appellant was actually
operating a motor vehicle while intoxicated).  

            The issue before this
Court is whether it was reasonable for the ALJ to conclude that Trooper Markin had probable cause to believe that Allen was
operating his motor vehicle in a public place while intoxicated when it was
involved in an accident on FM 730 South. 
Probable cause exists when an officer has reasonably trustworthy
information to warrant a reasonable person to believe that a particular person has
committed an offense.  Tex. Dep't of Pub. Safety v. Butler, 110 S.W.3d 673,
675 (Tex.App.--Houston [14th Dist.] 2003, no pet.).  

            Witnesses at the scene
reported to officers that they had observed a pickup rear-end another vehicle
and drive away.  A license plate left at
the scene was matched to a pickup owned by Allen.  That pickup was later found abandoned.  The abandoned pickup showed front end
damage.  According to Allen's wife, Allen
called her to pick him up near the site of the abandoned pickup.  She convinced him to turn himself in and
drove him to the sheriff's office.  While
at the sheriff's office, Trooper Markin and others observed
Allen and detected an odor of an alcoholic beverage on his breath.[6]  These facts sufficiently establish probable
cause to believe that Allen was operating a motor vehicle in a public place
while intoxicated.

            Allen strongly urges us
to uphold the County Court at Law's decision reversing his license suspension
by arguing the Department's failure to show a temporal link between the
accident and his interaction with law enforcement when an odor of alcohol was
first detected.  See Butler, 110 S.W.3d at 674-76.  He contends a "substantial and
significant period of time" passed between the time of the accident and
his contact with law enforcement.[7]  We disagree with Allen's position.  

All that the Department was required to prove at the license
suspension hearing was probable cause to believe Allen was driving while
intoxicated.  The Department was not
required to prove Allen was intoxicated while operating his pickup at the time
of the accident.  Under the substantial evidence standard, we
find there was more than a scintilla of evidence to support a finding of
probable cause. We sustain the Department's sole issue. 

Conclusion

            The trial court's
judgment is reversed and judgment is rendered upholding the administrative
decision to suspend Allen's driver's license for 180 days.

 

                                                                                    Patrick A. Pirtle

                                                                                          Justice

 

 











[1]Tex.
Transp. Code Ann. § 724.035(a)(1) (West 2011).

 





[2]Tex. Transp. Code Ann. § 524.041(b) (West 2007).

 





[3]A
court of appeals has jurisdiction over decisions from county courts at law
involving driver's license suspensions.  See State Dep't of Pub. Safety v. Barlow, 48 S.W.3d 174, 175 (Tex. 2001).  But see
Tex. Transp. Code Ann. § 524.041(b) (West 2007); Tex. Dep't of Pub. Safety v.
Jenkins, 262 S.W.3d 811, 813 (Tex.App.--Eastland 2008, no pet.).

 





[4]Originally
appealed to the Second Court of Appeals, this appeal was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  Tex. Gov=t
Code Ann. ' 73.001 (West 2005).  We are unaware of any conflict between
precedent of the Second Court of Appeals and that of this Court on any relevant
issue.  Tex. R. App. P. 41.3.

 





[5]The
administrative decision may not be reversed unless it prejudices the
substantial rights of an appellant because the administrative findings,
inferences, conclusions, or decisions are: 


 

(A) in violation of a constitutional or
statutory provision;

(B) in excess of the agency=s
statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by
substantial evidence considering the reliable and probative evidence in the
record as a whole; or

(F) arbitrary
or capricious or characterized by abuse of discretion or clearly unwarranted
exercise of discretion.

 

Tex. Gov't Code Ann. §
2001.174(2) (West 2008)





[6]During
the license suspension hearing, Allen objected to statements contained in
Trooper Markin's sworn report as being inadmissible
hearsay.  However, hearsay statements may
be used to show probable cause.  See Wilkerson v. State, 726 S.W.2d 542, 545 (Tex.Crim.App. 1986).

 





[7]The
record reflects that Trooper Markin was dispatched to
the accident scene at 5:45 p.m.  Allen's
arrival at the sheriff's office occurred "a short time later."