Denise Ann DUBUISSON, Appellant,

v.

The STATE of Texas, Appellee.

Brenda Sue ROSENDAHL, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 54981, 54982.

Court of Criminal Appeals of Texas, Panel No. 3.

Oct. 18, 1978.

Rehearing Denied Nov. 15, 1978.

---

George W. Long, San Antonio, for appellant.

James M. Parker, City Atty., Charles S. Johnson and Steven W. Arronge, Asst. City Attys., San Antonio, for the State.

Before ROBERTS, ODOM and TOM G. DAVIS, JJ.

OPINION

ROBERTS, Judge.

These are appeals from convictions for violations of San Antonio Municipal Ordinance 46370 (hereinafter referred to as the ordinance). Upon their pleas of not guilty before the court, each appellant was convicted under a different section of the ordinance; each was assessed a fine of one hundred ten dollars.

Appellants both contend that the ordinance in its entirety is unconstitutionally overbroad on its face because it sweeps within its ambit protected speech and conduct in violation of the First and Fourteenth Amendments. We agree and reverse the judgments of conviction.

Appellant Rosendahl was convicted under Sec. 2(A) of the ordinance which provides:

"No entertainer or performer employed in any establishment in which food or beverage is sold to be consumed upon the premises, and wherein a strip or strip-tease act is conducted or engaged in shall mingle therein with any patron or spectator for any purpose." [1]

Appellant Dubuisson was convicted under Sec. 3(A) of the ordinance which provides:

"It shall be unlawful, in any place of business where food or beverage is sold to be consumed upon the premises, for any person, who is employed therein in any capacity, to solicit any patron of such establishment to purchase any article of food or beverage for the one soliciting or for another employee of such establishment."

Clearly, the ordinance seeks to define certain criminal conduct for which the penal sanction is not to exceed that of a Class C misdemeanor. See V.T.C.A., Penal Code, Sec. 12.23. [2]

■ Initially, we are confronted with the issue of appellants' standing to challenge the constitutionality of the ordinance. At a pre-trial hearing, the trial court concluded that there was no unconstitutional application of the ordinance to appellants. Assuming, without deciding, that the trial court's conclusion was correct, we hold that appellants nevertheless have standing to challenge the validity of the ordinance in this case. As the Supreme Court of the United States stated in *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 933, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648, 660 (1975):

"[E]ven though a statute or ordinance may be constitutionally applied to the activities of a particular defendant, that defendant may challenge it on the basis of overbreadth if it is so drawn as to sweep within its ambit protected speech or expression of other persons not before the Court."

See also *Young v. American Mini Theatres,* 427 U.S. 50, 58, 96 S.Ct. 2440, 2446, 49 L.Ed.2d 310, 319 (1976).

The record reflects that on March 20, 1976, at approximately 9:30 p. m., Detective Rudy Fuentes of the San Antonio Police Department visited a San Antonio nightclub known as the Casino Strip. After he had been there several minutes, appellant Rosendahl joined Fuentes at his table and the two engaged in general conversation. Shortly thereafter, appellant Dubuisson, a waitress at the club, approached Fuentes and Rosendahl and asked Fuentes if he "would buy the lady a drink"; Fuentes agreed. Approximately ten minutes later, after consuming the drink purchased for her by Fuentes, Rosendahl was introduced to the club's patrons by the bartender. She then began performing a dance in strip-tease fashion which culminated in her dancing completely nude before the audience.

---

1. Ordinance 46370 also contains the following special definitions:

   "SECTION 1. Definitions.
   "The following definitions shall apply in the interpretation and the enforcement of this article:
   "(1) Mingle—to associate or fraternize with or join the company of patrons or spectators of the establishment in which the entertainment is being performed.
   "(2) Private Parts—The following parts of the human body: the pubic area, pubic hair, perineum and buttocks of all entertainers, and the nipples of a female entertainer.

   "(3) Striptease—A form of entertainment wherein any of the private parts of an entertainer are exposed during the course of a performance.
   "(4) Strip—A form of entertainment wherein all of the private parts of an entertainer are exposed during the course of a performance."

2. Section 4(A) of the ordinance provides:
   "SECTION 4. Penalties.
   "A. Any person who shall violate any provision of this article shall be deemed to be guilty of a misdemeanor and shall upon conviction be punished by a fine not exceeding two hundred dollars ($200.00)."

At the outset we observe that Ordinance 46370 makes no distinction between establishments licensed to sell alcoholic beverages and those that are not so licensed. It applies with equal force to employees and entertainers working in either type of establishment.

The record indicates that at the time of the offenses the Casino Strip was not licensed to sell alcoholic beverages, and that no alcoholic beverages were in fact sold. Therefore, it cannot be argued that the municipal police power to enact this ordinance is buttressed by the explicit grant of power from the Twenty-First Amendment of the U.S. Constitution.[3] See and compare *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), in which the U.S. Supreme Court upheld certain state regulations prohibiting lewd or naked dancing and entertainment in establishments licensed to sell alcoholic beverages. In so holding the court stated:

"The state regulations here challenged come to us, not in the context of censoring a dramatic performance in a theater, but rather in a context of licensing bars and nightclubs to sell liquor by the drink.

. . .

"While the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-First Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals." Id. at 114, 93 S.Ct. at 395, 34 L.Ed.2d at 349–350.

We conclude therefore, based on the rationale of *LaRue,* supra, that the ordinance must stand or fall solely on the basis of the city's general police power, delegated to it by the State, to reasonably regulate activities relating to the health, safety and welfare of its citizenry.

The critical issue in the present case is the city's attempt to ban certain speech and conduct across the board, in liquor-vending as well as non-liquor-vending establishments.[4]

The ostensible purpose of the ordinance, as evidenced by its preamble,[5] is to protect

---

3. The Twenty-First Amendment provides in relevant part:

"Sec. 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

4. The State relies on the following cases as persuasive authority to uphold the validity of the ordinance: *De Francis v. City of Bossier,* 322 So.2d 333 (La.App.1975); *City of New Orleans v. Kiefer,* 246 La. 305, 164 So.2d 336 (1964); *Playboy Club of New York, Inc. v. O'Connell,* 14 N.Y.2d 648, 249 N.Y.S.2d 433, 198 N.E.2d 602 (N.Y.App.1964). The State's reliance is misplaced; the cases cited are inapposite.

While the ordinances involved in these cases are substantially similar to the one presently considered, the holdings of those cases are based on the State's right, under the Twenty-First Amendment, to regulate within its borders the sale and use of intoxicating liquors, a power which does not aid the City of San Antonio in the present case. See also *Aristocratic Restaurant of Mass., Inc. v. Alcoholic Beverages Control Comm'n,* 374 N.E.2d 1181 (Mass.1978); *People v. King,* 115 Cal.App.2d Supp. 875, 252 P.2d 78 (1952); *Page v. State,*

492 S.W.2d 573 (Tex.Cr.App.1972); *Courtemanche v. State,* 507 S.W.2d 545 (Tex.Cr.App. 1974).

5. The preamble of Ordinance 46370 provides:

"WHEREAS, the City of San Antonio is the site of major training bases for new enlisted military personnel of the United States and foreign nations, many of whom have been victimized by employees and entertainers in certain establishments; and

"WHEREAS, local youth have also been victimized by said entertainers and employees; and

"WHEREAS, tourists, who provide the basis of a major source of revenue for the City of San Antonio have similarly been victimized by said employees and entertainers; and

"WHEREAS, such conduct has been encouraged by management of said establishments; and

"WHEREAS, said conduct often consists of a promise or an intimation of sexual conduct, as defined in Section 43.01 V.T.C.A., Penal Code, between entertainer and patron premised upon the purchase of food or beverage for the one soliciting; and

"WHEREAS, such intimation of sexual conduct is often reinforced by a touching or

the novice clientele of San Antonio night-clubs from being "hustled" and "conned" by unscrupulous employees working in some of those establishments. We recognize the legitimate governmental interest in eliminating this exploitative type of conduct, especially since tourism plays such a significant role in the city's economy, as reflected by the record.

■ However, a permissible end may not be accomplished by unconstitutional means. Only a compelling state interest will warrant the reasonable governmental regulation of one's First Amendment freedoms. *Young v. American Mini Theatres,* supra; *N. A. A. C. P. v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405, 421 (1963).

It does not require a strain of the imagination to envision numerous situations where the ordinance would officially condemn otherwise constitutionally protected conduct. Within the meaning of the ordinance's definitions of "strip" and "strip-tease" could conceivably fall a variety of productions of acclaimed artistic value ranging from modern interpretations of Shakespeare to the contemporary musical "Hair." The practical effect of Sec. 2(A) would be to hold the entire cast of players in these productions incommunicado from admiring fans and patrons while the performers remained on the premises upon which the performance was staged, provided that food or beverage were sold for consumption there. It requires sweeping authority indeed to mute an entire cast of players in the manner contemplated by Sec. 2(A).

■ In this respect, the ordinance tends to impede advancement of the arts. Furthermore, we recognize the artist's need to establish a healthy rapport with his patrons in order to improve and refine his creative product. Entertainers, like other citizens, are entitled to the fundamental

freedoms guaranteed by the First Amendment. *Schacht v. United States,* 398 U.S. 58, 63, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970). We therefore hold that Section 2(A) of the ordinance is unconstitutionally overbroad.

■ With respect to Sec. 3(A), which authorized the conviction of appellant Dubuisson, we note initially that the communication sought to be prohibited is properly labeled as "commercial speech" because it involves "a solicitation to purchase or otherwise pay or contribute money." *Va. State Brd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,* 425 U.S. 748, 761, 96 S.Ct. 1817, 1825, 48 L.Ed.2d 346, 358 (1976). "Commercial speech," although more readily subject to reasonable regulation than the expression of ideas, beliefs and philosophy, is nevertheless protected by the guarantees of the First Amendment. *Va. State Brd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,* supra.

Section 3(A) prohibits employees of food or beverage vending establishments from soliciting "any patron." The phrase "any patron" conceivably includes friends as well as relatives of the soliciting employee. Thus, one is subject to prosecution if he were to solicit his parent or spouse who happened to be patronizing his place of employment—even if the solicitation were in jest.

Nor does Sec. 3(A) require that the solicitation be for the purchase of food or beverage sold on the establishment's premises wherein the solicitor is employed. Hence, the ordinance prohibits solicitations for food or beverage to be purchased after working hours and at remote locations.

Moreover, it is possible for one to violate Sec. 3(A) without knowing one has done so. This section imposes no requirement that the soliciting employee "know" that he is soliciting for the benefit of another employee, and therefore presumes that every em-

fondling of the patron or spectator by the entertainer; and
"WHEREAS, the City Counsel has determined that it is the duty of the City of San Antonio to protect the health and welfare of the consuming public in this area; and

"WHEREAS, many of such businesses hold Food Establishment Licenses issued by the City of San Antonio; NOW THEREFORE: . . . ."

ployee "knows" each of his fellow employees. We can conceive of situations where this presumption would prove to be erroneous.

A municipal ordinance may, in some instances, permissibly provide for strict criminal liability due to the overriding governmental interest in promoting the health, safety and welfare of its citizens; however, an ordinance that seeks to regulate personal freedoms by imposing penal sanctions for unknowing infractions, under the guise of general police power, exceeds the constitutional limits of due process. *Smith v. California,* 361 U.S. 147, 154, 80 S.Ct. 215, 219, 4 L.Ed.2d 205, 212 (1959).

In light of the foregoing considerations, we perceive no compelling governmental interest sufficient to overcome the potential source of mischief created by Ordinance 46370. *Young v. American Mini Theatres,* supra; *N. A. A. C. P. v. Button,* supra.

Mindful of our duty to construe the ordinance in such a way as to uphold its validity if possible, *Delorme v. State,* 488 S.W.2d 808, 811 (Tex.Cr.App.1973), we conclude that the ordinance in its entirety is overbroad and not subject to a limiting construction; we further conclude that its deterrent effect on legitimate expression and conduct is both real and substantial. *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975). Therefore, we hold that it cannot withstand the constitutional challenge here presented.

Unaided by the specific grant of power from the Twenty-First Amendment, the City of San Antonio exceeded its general delegated police power by enacting Ordinance 46370. See generally *Marney v. State,* 168 Tex.Cr.R. 567, 330 S.W.2d 623 (1960); *Ex parte Luehr,* 159 Tex.Cr.R. 566, 266 S.W.2d 375 (1954); *Ex parte Faulkner,* 143 Tex.Cr.R. 272, 158 S.W.2d 525 (1942).

In concluding that the ordinance is invalid on its face, we do not impugn the legitimate governmental interest at stake. We hold only that the present ordinance does not satisfy the rigorous constitutional standards of precision and clarity that apply when government attempts to regulate First Amendment rights. See *Erznoznik v. City of Jacksonville,* supra.

The judgments are reversed and the prosecutions under this invalid ordinance ordered dismissed.