**2300, INC. d/b/a 2300 Club and Centerfold, Inc. d/b/a La Bare, Appellants,**

v.

**CITY OF ARLINGTON, TEXAS, Appellee.**

**No. 2–94–00135–CV.**

Court of Appeals of Texas, Fort Worth.

Oct. 19, 1994.

Ordered Published Nov. 22, 1994.

Rehearing Overruled Nov. 22, 1994.

---

124

Steven H. Swander, Fort Worth, for appellants.

Thomas P. Brandt, Fanning, Harper & Martinson, Dallas, for appellee.

Before HILL, C.J., and FARRIS and HICKS, JJ.

## OPINION

HICKS, Justice.

Appeal was taken from the trial court's denial of a temporary injunction against the

City of Arlington. 2300, Inc. d/b/a 2300 Club and Centerfold, Inc. d/b/a La Bare ("appellants") challenge the constitutionality of the City of Arlington Ordinance No. 92–117 Sections 5.01(A) and (B) entitled "Additional Regulations for Adult Cabaret" (the "no touch" provisions). The trial court found the "no touch" provisions constitutional as enacted. In two points of error, appellants allege error by the trial court in denying the temporary injunction.

We affirm.

## BACKGROUND

Appellants are two adult cabarets operating in Arlington, Texas. In November, 1992, the City of Arlington passed and approved the "no touch" provisions as part of the Adult Entertainment Chapter of the Code of the City of Arlington, Texas, to regulate adult entertainment.[1] Appellants contend they are adversely affected by the application of the "no touch" provisions.

In March, 1993, Arlington police began enforcing the "no touch" provisions and issued tickets to violators which included dancers and patrons of the clubs. The clubs themselves, however, were not cited. Appellants sought the injunction to prevent enforcement of the "no touch" provisions pending a determination of the constitutionality of the ordinance. Appellants contend that although they sought to make costume changes so that their dancers would not be performing in a "state of nudity,[2]" the "no touch" provisions are facially overbroad and violate their equal protection rights under the Texas Constitution.

## STANDARD OF REVIEW

■ Generally under Texas law, the trial court has broad discretion in determining whether to issue a temporary injunction to preserve the rights of the parties pending a final trial on the merits. *Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex.1978); *Valenzuela v. Aquino*, 763 S.W.2d 43, 44 (Tex.App.—Corpus Christi 1988, no writ). Accordingly, the standard of review for an order granting or denying a temporary injunction is whether or not there has been a clear abuse of discretion by the trial court. *Id.*

■ The trial court abuses its discretion in granting or denying a temporary injunction when it misapplies the law to the established facts or when the evidence does not reasonably support the conclusion that the applicant has a probable right of recovery. *See e.g., State v. Southwestern Bell Telephone Co.*, 526 S.W.2d 526, 528 (Tex.1975); *Kinkaid School, Inc. v. McCarthy*, 833 S.W.2d 226, 229 (Tex.App.—Houston [1st Dist.] 1992, no writ). In reviewing the trial court's order denying the temporary injunction, this court will draw all legitimate inferences from the evidence in the light most favorable to the trial court's judgment. *Valenzuela*, 763 S.W.2d at 44. Because the facts are undisputed and conclusions of law were not filed, this Court will uphold the trial court's judgment on any legal theory supported by the evidence. *Id.; Seaman v. Seaman*, 425 S.W.2d 339 (Tex.1968).

## MERITS

### I. THE "NO TOUCH" PROVISIONS ARE NOT FACIALLY OVERBROAD

■ In point of error number one, appellants contend that the "no touch" provisions are facially overbroad in violation of Article I section 8 of the Texas Constitution. We disagree. When addressing an overbreadth challenge, the inquiry is to (1) determine

---

1. The "no touch" provisions provide:
   A. An employee of an adult cabaret while appearing in a state of nudity commits an offense if he touches a customer or the clothing of a customer.
   B. A customer at an adult cabaret commits an offense if he touches an employee appearing in a state of nudity or clothing of the employee.
   ARLINGTON, TEX.ORDINANCE 92–117, § 5.01(A) and (B) (Nov. 17, 1992).

2. "State of nudity" is defined:
   B.17 Nudity or a state of nudity means:
   1. The appearance of a human bare buttock, anus, male genitals, female genitals, or female breast; or
   2. A state of dress which fails to opaquely cover a human buttock, anus, male genitals, female genitals, or areola of the female breast.
   ARLINGTON, TEX.ORDINANCE 92–117, § 2.01(B)(17) (Nov. 17, 1992).

whether the enactment of the ordinance reaches a substantial amount of constitutionally protected conduct and (2) apply an appropriate constitutional test for restrictions on the protected speech. *Rahmani v. State,* 748 S.W.2d 618, 621 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd) (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982).

### A. Constitutionally Protected Conduct

■ Topless/exotic dancing has been recognized as being within the constitutional protections of the First and Fourteenth Amendments. *See generally Schad v. Bourough of Mount Ephraim,* 452 U.S. 61, 65, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671, 678 (1981); *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932–33, 95 S.Ct. 2561, 2568–69, 45 L.Ed.2d 648, 660 (1975).

### B. Constitutional Standard Applicable to Restrictions

■ Since it is apparent that topless/exotic dancing is constitutionally protected conduct, this Court will look to see if some exception applies which would justify the trial court's action. In challenging the "no touch" provisions, appellants rely upon the standard imposed in *Ex parte Tucci,* which sets forth a stringent test for restrictions on protected speech: 1) the restrictions must be targeted at the effect of expression rather than at the expression itself and 2) any limitation must represent the least restrictive means to prevent the harmful effects. *Ex*

parte *Tucci,* 859 S.W.2d 1, 5–6 (Tex.1993). Appellants' reliance on *Tucci* as the applicable constitutional standard is misplaced. As appellants have correctly pointed out, Article I section 8 of the Texas Constitution does provide broader rights of free speech than those provided by the First Amendment of the United States Constitution, *Davenport v. Garcia,* 834 S.W.2d 4, 8 (Tex.1992); however, the greater protection afforded by Article I section 8 is not applicable to restrictions on topless/exotic dancing. *See generally, Rahmani* [3], 748 S.W.2d at 618; *Ex parte Tucci* [4], 859 S.W.2d at 1. Recognizing that the Texas Constitution does afford greater protection of free speech than the First Amendment, the cases interpreting this protection have been limited in scope and thus far, have not included topless/exotic dancing. Based on case law and the history surrounding Article I section 8, the trial court reasonably concluded that topless/exotic dancing probably was not contemplated as being included in the expanded protections of the Texas Constitution when Article I section 8 was drafted. This Court will not disturb this conclusion because no clear abuse of discretion was established.

■ Additionally, although First Amendment coverage extends to topless/exotic dancing, it does not guarantee the right to engage in the protected expression at all times and places or in any manner that may be desired. *See Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 647, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298, 306 (1981); *Kev, Inc. v. Kitsap County,* 793 F.2d 1053, 1058 (9th Cir.1986).

3. The *Rahmani* case goes through an extensive history of Article I section 8 of the Texas Constitution which provides in pertinent part: "Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege...."

To further support the conclusion that Article I section 8 does not extend to topless/exotic dancing, *Rahmani* also provides that there is a "less vital interest in uninhibited exhibition of material on the borderline between pornography and artistic expression than in free dissemination of ideas of social and political significance." *Rahmani,* 748 S.W.2d at 621 (*quoting Young v. American Mini Theatres,* 427 U.S. 50, 61, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1976)).

*See also Davenport,* 834 S.W.2d at 7 ("the history of this provision [Article I section 8] is a

rich one, and its language demonstrates Texas' strong and longstanding commitment to free speech....

From the outset of this state's history, freedom of expression was a priority.... This first proposed constitution incorporated the strong desire of Texas to speak without fear of governmental repression").

4. The *Tucci* case dealt with the scope of the state constitutional guarantee of freedom of expression. The parties involved in *Tucci* had initiated pro-life protests to vehemently express their pro-life views. The trial court issued restraining orders directed to protect against specific injuries alleged by women, abortion clinics and other businesses and to insure access to the facilities.

A governmental entity, when acting to further legitimate ends of the community, may impose incidental burdens on free speech. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 45–46, 106 S.Ct. 925, 928–29, 89 L.Ed.2d 29, 36 (1986). Time, place and manner restrictions are permissible if they are: (1) content neutral; (2) narrowly tailored to serve a significant government interest; and (3) leave open ample alternative channels for communication. *Rahmani,* 748 S.W.2d at 622 (*quoting Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3068, 82 L.Ed.2d 221 (1984)).

■ Applying the "time, place and manner" test, this Court upholds the trial court's conclusion that the "no touch" provisions are content-neutral. Although the provisions specifically apply to adult cabarets, they do not discriminate on the basis of the content of the dance performance. Rather, the provisions are directed at the secondary effects of adult cabarets, namely crimes such as prostitution, drug trafficking and assault, which is constitutionally permissible. *See generally City of Renton,* 475 U.S. at 45–46, 106 S.Ct. at 929, 89 L.Ed.2d at 36. The trial court's conclusion that the "no touch" provisions are content-neutral is reasonable and may be justified without reference to the content of the dance performance.

■ As to the requirement that the ordinance be narrowly tailored, an ordinance is sufficiently "well tailored" if it effectively promotes the government's stated interest without infringing significantly upon protected conduct. *SDJ, Inc. v. City of Houston,* 837 F.2d 1268, 1275 (5th Cir.1988). The City of Arlington drafted an ordinance to control problems it found to be serious. This Court notes that the "no touch" provisions were drafted to limit themselves to a specific business environment—adult cabarets—and the regulation of that environment, specifically in terms of the physical exchanges between the dancers and the patrons. The ordinance is sufficiently well tailored. Addressing the requirement that the government's interest be significant, the stated purpose of the ordinance attests to the importance and substantiality of the governmental interest involved.[5] This Court upholds the trial court when it concluded in the record:

> What the city did, rather than creating a vagueness question, they were very clear in what they were prohibiting, and they prohibited touching of all forms while the dancer was in any state of nudity. That state of nudity is defined. I see no question with regard to any of the language in the ordinance that would make it vague. It's as clear as clear can be.
>
> Dancers in a state of nudity are not to touch customers. I see nothing constitutionally wrong with that. It's not for me to judge the wisdom of the City Council's act. I express no opinion on that. I'm here only to resolve the issue of whether or not the act by the City Council of Arlington is prohibited by the constitution of this State. I find that it is not prohibited.

■ As to the third requirement, the provisions leave open ample alternative communication channels. Appellants rely on *Dubuisson v. Texas,* 572 S.W.2d 694 (Tex.Crim. App. [Panel Op.] 1978) to implicitly establish a "right to touch." Appellants' reliance on *Dubuisson* is misplaced. Although *Dubuisson* does recognize a performer's need to establish a rapport with the audience, it does not establish a "right to touch" as appellants urge. The actual effect of the "no touch" provisions is to forbid physical contact between the topless/exotic dancer and the pa-

---

5. The stated purpose of the ordinance is stated in section 1.02 which provides:

It is the purpose of this Chapter to regulate Adult Entertainment Establishments to promote the health, safety, morals and general welfare of the citizens of the City, and to establish reasonable and uniform regulations to prevent the continued concentration of Adult Entertainment Establishments within the City. The provisions of this chapter have neither the purpose nor effect of imposing a limitation or restriction on the content of any communicative materials, including sexually oriented materials. Similarly, it is not the intent nor effect of this Chapter to restrict or deny access by adults to sexually oriented materials protected by the First Amendment or to deny access by the distributors and exhibitors of sexually oriented entertainment to their intended market. ARLINGTON, TEX.ORDINANCE 92–117 § 1.02 (Nov. 17, 1992).

trons while the dancer is in a "state of nudity." Although "touching" may be the preferred method to establish rapport, the dancer still has other available means to establish rapport and communicate with the audience. The trial court's conclusion that the "no touch" provisions are permissible restrictions is reasonable.

Summarily, this Court finds no abuse of discretion in the trial court's conclusion that the "no touch" provisions are not facially overbroad. The evidence presented reasonably supported the trial court's conclusion underlying the denial of the temporary injunction, thus, the trial court acted within the bounds of its discretion.

## II. *EQUAL PROTECTION RIGHTS*

In point of error number two, appellants assert that the "no touch" provisions violate their equal protection rights as guaranteed by Article I section 3 of the Texas Constitution because the provisions only apply to adult cabarets and no other sexually-oriented businesses. Appellants contend that the employees and customers of adult cabarets are singled out through an arbitrary underinclusive classification.

■ In *Smith v. State,* the First Court of Appeals addressed, and this Court adopts, the issue of what standard is applicable when reviewing an ordinance alleged to be unconstitutional on equal protection grounds. "If a statutory scheme infringes upon fundamental rights or interests or burdens an inherently 'suspect' class, the scheme is subject to strict scrutiny, and the statutory classification must promote a compelling state interest. If, however, the statutory scheme does not involve a fundamental right or a suspect class, then the appropriate standard of review is whether the classification is reasonable, not arbitrary, and bears a reasonable relationship to a legitimate state objective." *Smith v. State,* 866 S.W.2d 760, 764 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). As previously indicated, there is no constitutionally established "right to touch," and owners or operators of sexually oriented businesses do not constitute a suspect class. *Id.*

■ We agree with the trial court's conclusion as stated in the record:

And with regard to the equal protection challenge that's made, that being one that if the dancers in adult cabarets are prevented, all employees of sexually oriented businesses should be prevented from touching. It's my understanding of constitutional law that the Legislature need not cure all problems with one legislative act. As long as all adult cabaret exotic dancers are treated the same, I see no denial of equal protection.

Accordingly, there is no equal protection violation as long as the "no touch" provisions are applied equally to all adult cabarets. The City of Arlington is not required to regulate all sexually oriented businesses in the same manner and is not required to address and/or correct all problems in one piece of legislation. There is no fundamental "right to touch" and appellants are not a suspect class. Since the "no touch" provisions do not involve a fundamental right nor a suspect class, the trial court's application of a reasonableness standard is appropriate. Additionally, the "no touch" provisions are reasonable in that they only apply to touching while the dancer is in a "state of nudity." This bears a reasonable relationship to the City of Arlington's legitimate objective in regulating sexually oriented businesses so as to promote the general welfare and protection of its neighborhoods and businesses from what the City established to be the detrimental secondary effects of sexually oriented businesses.

The trial court was cloaked with broad discretion in denying the temporary injunction and this Court will not disturb the trial court's ruling absent a showing of a clear abuse of discretion. We hold that the trial court did not err in denying the temporary injunction and it properly applied the law to the undisputed facts. We overrule appellants' two points of error.

The judgment of the trial court is affirmed.