# NO. 12-12-00348-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *KRYSTYNA RISHEL REYNOLDS,* <br> *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW* |
| *THE STATE OF TEXAS,* <br> *APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Krystyna Rishel Reynolds appeals her conviction for working at an adult cabaret without a sexually oriented business employee license. After a jury trial, the trial court assessed punishment at 180 days in jail, probated for twelve months. In five issues, she asserts that the Nacogdoches County Commissioners' Court's order on sexually oriented businesses violates her constitutional rights and the Texas Local Government Code, and the evidence is insufficient to support the verdict. We affirm.

## BACKGROUND

In the 1990s, an establishment known as Show Girls operated in Nacogdoches County as a sexually oriented business, featuring nude female dancers. In 1996, the Nacogdoches County Commissioners' Court rendered an order regulating sexually oriented businesses. Show Girls did not meet the requirements in the order. It then changed its operation to remove itself from the purview of the order by requiring its dancers to wear bikinis. It later changed its name to Baby Dolls Gentlemen's Club, although the management and ownership remained the same.

Nacogdoches County Sheriff Thomas Kerrs suspected that Baby Dolls still operated in violation of the order. He recruited a female peace officer to work undercover as a dancer at Baby Dolls. After the undercover officer worked there for two to three weeks, the sheriff felt he

had enough evidence to show that Baby Dolls was in violation of the order. Additionally, all employees of Baby Dolls were in violation of the order's employee licensing requirement.

Based on the information provided by the undercover officer, the employees of Baby Dolls were arrested on August 20, 2011, for violation of the county's order regulating sexually oriented businesses. Appellant, a dancer at the establishment, was among those arrested. She was charged with working at a sexually oriented business without a sexually oriented business employee license as required by the county commissioners' order. A jury found her guilty. The trial court sentenced her to 180 days in jail, probated for twelve months.

## CONSTITUTIONALITY OF THE ORDER

In her first issue, Appellant contends the Nacogdoches County Commissioners' order regulating sexually oriented businesses violates her constitutional right to freedom of speech. She claims that the dancers at Baby Dolls are "bikini dancers," bikini dancing is a form of expression and protected speech, and the strict scrutiny test applies. She argues that the order fails the strict scrutiny test because it is not the least restrictive means available to alleviate public welfare concerns associated with sexually oriented businesses.

### Applicable Law

The First Amendment protects exotic dancing. *See* ***Schad v. Bourough of Mount Ephraim***, 452 U.S. 61, 65-66, 101 S. Ct. 2176, 2181, 68 L. Ed. 2d 671 (1981). Nude and semi-nude dancers have a marginal constitutional right, within the outer perimeters of the First Amendment, to convey the erotic message that is implicit in their dancing. *See* ***RCI Entertainment (San Antonio), Inc. v. City of San Antonio***, 373 S.W.3d 589, 602 (Tex. App.–San Antonio 2012, no pet.). In analyzing whether a law impermissibly abridges the freedom of speech in the context of adult entertainment, courts distinguish laws that regulate content and those that regulate the consequences of protected activity. *See* ***City of Renton v. Playtime Theatres, Inc.***, 475 U.S.41, 46-48, 106 S. Ct. 925, 928-29, 89 L. Ed. 2d 29 (1986). If the governmental purpose in enacting the legislation is related to the content of the expression, the regulation must be justified under a strict standard. ***City of Erie v. Pap's A.M.***, 529 U.S. 277, 289, 120 S. Ct. 1382, 1391, 146 L. Ed. 2d 265 (2000) (plurality opinion). However, if the purpose for enacting the legislation is unrelated to the suppression of expression, then the

regulation need only satisfy the less stringent standard for evaluating restrictions on symbolic speech. *Id*.

A content-neutral restriction on speech withstands less stringent scrutiny if it (1) falls within "the constitutional power" of the government, (2) furthers an important or substantial governmental interest, (3) furthers that interest in a manner unrelated to the suppression of free expression, and (4) imposes no greater incidental restriction on protected speech "than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 376-77, 88 S. Ct. 1673, 1679, 20 L. Ed. 2d 672 (1968). When reviewing content neutral government regulation of sexually oriented businesses, courts routinely employ intermediate scrutiny. *Fantasy Ranch, Inc. v. City of Arlington*, 459 F.3d 546, 554 (5th Cir. 2006). Included among the sufficient governmental interests that justify content-neutral regulations are the prevention of harmful secondary effects and the protection of morals and public order. *See City of Erie*, 529 U.S. at 290-91, 120 S. Ct. at 1391-92.

## Analysis

Appellant would have us focus on the fact that dance is expression and, when she danced, she was not entirely nude. Therefore, she asserts, her "bikini dancing" was protected speech, the licensing requirement is aimed at suppressing her speech, and therefore the strict scrutiny test applies. We disagree.

The first paragraph of the Nacogdoches County sexually oriented business order provides as follows:

> It is the purpose of this Order to regulate sexually oriented businesses to promote the health, safety, and general welfare of the citizens of the County, and to establish reasonable and uniform regulations to prevent the concentration of sexually oriented businesses within the County. The provisions of this Order have neither the purpose nor effect of imposing a limitation or restriction on the content of any communicative materials, including sexually oriented materials. Similarly, it is not the intent, nor effect of this Order to restrict or deny access by adults to sexually oriented materials protected by the First Amendment, or to deny access by the distributors and exhibitors for sexually oriented entertainment to their intended market.

Among other regulations, the order provides that all owners, clerks, and employees of a sexually oriented business are required to be licensed to work in said business. Accordingly, the reason for the licensing requirement is to promote the health, safety, and general welfare of the citizens

of Nacogdoches County, a long recognized valid duty of local governments. *See City of Renton*, 475 U.S. at 47-48, 106 S. Ct. at 929; *City of Erie*, 529 U.S. at 291, 120 S. Ct. at 1392; *Combs v. Tex. Entertainment Ass'n, Inc.*, 347 S.W.3d 277, 287-88 (Tex. 2011), *cert. denied*, 132 S. Ct. 1146 (2012). Thus, the order regulates the consequences of Appellant's protected speech, not the content, and the licensing regulation need only satisfy the *O'Brien* test, not strict scrutiny.

Chapter 243 of the Texas Local Government Code is the enabling legislation that permits local governments to regulate sexually oriented businesses. TEX. LOC. GOV'T CODE ANN. § 243.001 (West 2005). The legislature determined that the unrestricted operation of sexually oriented businesses may be detrimental to the public health, safety, and welfare by contributing to the decline of residential and business neighborhoods and the growth of criminal activity. *Id*. § 243.001(a). A county, by order of the commissioners' court, may adopt regulations regarding sexually oriented businesses as the county considers necessary to promote the public health, safety, or welfare. TEX. LOC. GOV'T CODE ANN. § 243.003(a) (West 2005). The local government code specifically provides that Chapter 243 does not diminish the authority of a local government to regulate sexually oriented businesses with regard to any matters. TEX. LOC. GOV'T CODE ANN. § 243.001(b). Regulation of conduct may include the requirement that an employee acting as an entertainer in a sexually oriented business hold a permit issued by local governmental authorities. *See Flores v. State*, 33 S.W.3d 907, 916 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). Accordingly, enactment of the order is clearly within the constitutional power of the Nacogdoches County Commissioners' Court and the first prong of *O'Brien* is met.

Government regulation of the secondary effects of sexually oriented businesses, such as the impacts on public health, safety, and welfare, furthers a substantial governmental interest. *City of Erie*, 529 U.S. at 291, 120 S. Ct. at 1392. Further, it has been held that licensing weeds out persons with a history of regulatory violations or sexual misconduct who would manage or work in sexually oriented businesses. *See TK's Video, Inc. v. Denton Cnty.*, 24 F.3d 705, 710 (5th Cir. 1994). *O'Brien*'s second prong is met.

As we determined above, the licensing requirement in no way affects the content of Appellant's expressive dancing and thus is unrelated to the suppression of free expression. *O'Brien*'s third prong is met.

We next consider whether the incidental restriction on First Amendment freedoms is any greater than necessary. To be well-tailored, an ordinance must effectively promote the

4

government's stated interest while not infringing significantly upon the protected conduct. *2300, Inc. v. City of Arlington, Tex.*, 888 S.W.2d 123, 128 (Tex. App.–Fort Worth 1994, no writ). As noted above, licensing substantially relates to the substantial governmental interest of curtailing pernicious side effects of adult businesses. *TK's Video, Inc.*, 24 F.3d at 710. The order provides that applicants who have been convicted of certain crimes within specified time periods prior to applying shall not be approved for a license. The crimes listed are plainly correlated with the potential side effects of sexually oriented businesses. *Id*. Thus, the order required only information reflecting ability to function responsibly in the adult business setting. *Id*. Applicants are also required to pay a $100.00 fee. The record shows that all of that fee goes toward the administrative costs of processing the application. Narrowly tailored fees to defray administrative cost of regulation are acceptable. *Id*. We conclude that the order is well-tailored and does not infringe on First Amendment freedoms any more than necessary. Accordingly, the order meets the fourth prong of the *O'Brien* test. The licensing requirement does not unduly burden the dancer's ability to express her erotic message. Because the order satisfies the four-prong *O'Brien* test, we conclude that the Nacogdoches County Commissioners' Court's order regulating sexually oriented businesses does not violate the First Amendment's right to freedom of speech. We overrule Appellant's first issue.

### PERMIT REQUIREMENTS

In her second issue, Appellant asserts that the application process for obtaining a permit to work at a sexually oriented business violates her civil rights against government overreaching. She argues there is no nexus between the requirements and the public welfare concerns they supposedly address.

This court is prohibited from issuing advisory opinions. *Wessely Energy Corp. v. Jennings*, 736 S.W.2d 624, 628 (Tex. 1987). Thus, under the ripeness doctrine, there must be a concrete injury for a justiciable claim to be presented. *Patterson v. Planned Parenthood of Houston and Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998). We consider whether a dispute has matured to a point that warrants a judicial decision; that is, whether the facts were sufficiently developed so that an injury had occurred or was likely to occur, rather than being contingent or remote. *Perry v. Del Rio*, 66 S.W.3d 239, 249 (Tex. 2001); *Patterson*, 971 S.W.2d at 442. Appellant never applied for a license to work at a sexually oriented business in

Nacogdoches County. Thus, her complaint is not addressed to a specific event that has occurred, but only to the potential for government overreaching. Because Appellant's complaint is not yet ripe, we overrule her second issue.

In her third issue, Appellant asserts that the order's requirement that all employees of sexually oriented businesses obtain a county permit is in violation of Texas Local Government Code Section 243.007(a). She points out that the statute authorizes the county to require an owner or operator of a sexually oriented business to obtain a license or permit but it does not mention employees of sexually oriented businesses.

As explained above, local government code Chapter 243 is the applicable enabling legislation. TEX. LOC. GOV'T CODE ANN. § 243.001. Chapter 243 does not diminish the authority of a local government to regulate sexually oriented businesses with regard to any matters. TEX. LOC. GOV'T CODE ANN. § 243.001(b). The conduct of employees, as well as owners and operators, may be regulated by local governmental authorities. *See State v. Chacon*, 273 S.W.3d 375, 381 (Tex. App.–San Antonio 2008, no pet.); *Thompson v. State*, 44 S.W.3d 171, 176 (Tex. App.–Houston [14th Dist.] 2001, no pet.); *Flores*, 33 S.W.3d at 916; *Haddad v. State*, 9 S.W.3d 454, 459 (Tex. App.–Houston [1st Dist.] 1999, no pet.). We overrule Appellant's third issue.

## SUFFICIENCY OF THE EVIDENCE

In her fifth issue, Appellant contends the evidence is legally insufficient to prove that Baby Dolls was a sexually oriented business on the night of August 20, 2011. She argues that, for years, no violations were reported and no employees were arrested. Because no changes were made in the dancers' manner of dancing or of dressing, she reasons, Baby Dolls could not have met the definition of a sexually oriented business on the night the sheriff's office closed it down.

In her fourth issue, Appellant contends the evidence is factually insufficient to show she possessed the requisite mens rea for the offense. She asserts that neither her employer nor the sheriff's office told her she needed a permit. While the dancers at Baby Dolls discussed whether they were required to get a permit, and agreed that they should, no one said it was necessary for employment at Baby Dolls. She points out that she called the sheriff's office to ask if the local law required employees of Baby Dolls to obtain a permit and was told she did not need one.

**Standard of Review**

In Texas, the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). This standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

**Analysis**

The jury charge included the following instructions:

> A person violates the Sexually Oriented Business Order if the person intentionally, knowingly, or recklessly operates or works at an Adult Cabaret in Nacogdoches County, Texas, without having first been issued a valid sexually oriented business employee license by the Nacogdoches County Sheriff.
>
> All owners, clerks and employees of a sexually oriented business are required to be licensed to operate or work in a sexually oriented business.
>
> 'Sexually Oriented Business' means an adult arcade, adult video store, adult cabaret, adult bookstore, . . . or other commercial enterprise, the primary business of which is the offering of a service or the selling, renting or exhibiting, or devices, or any other items intended to provide sexual stimulation or sexual gratification to the customer.
>
> 'Adult Cabaret' means a night club, bar, restaurant, or similar commercial establishment which regularly features:
>> A. Persons who appear in a state of nudity; or
>> B. Live performances which are characterized by the exposure of 'specified anatomical area' or by 'specified sexual activities'; or

7

C. Films, motion pictures, video cassettes, slides, or other photographic reproductions which are characterized by the depiction or description of 'specified sexual activities' or 'specified anatomical area.'

'Specialized Sexual Activities' means and includes any of the following: Sex acts, normal or perverted, actual or simulated, including intercourse, oral copulation or sodomy.

### *Definition of Sexually Oriented Business*

The charge's definition of adult cabaret is identical to the definition found in the order. The order defines "state of nudity" as "[t]he appearance of a human bare buttock, anus, male genitals, female genitalia, pubic region or female breasts;" or "[a] state of dress which fails to opaquely cover a human buttock, anus, male genitals, female genitalia, pubic region or areola of the female breast." "Specified sexual activities" is defined as "[t]he fondling or other erotic touching of human genitals, pubic region, buttocks, anus, or female breasts;" "[s]ex acts, normal or perverted, actual or simulated, including intercourse, oral copulation, or sodomy;" or "[m]asturbation, actual or simulated."

The record shows that Baby Dolls was a club that offered live performances by females wearing bikinis. Sheriff Kerrs testified that simulated sexual acts occurred at Baby Dolls on the night of Appellant's arrest. He also testified that the club met the definition of "adult cabaret" because the dancers failed to adequately cover all areas required to be covered including the buttocks and areola, thereby meeting the definition of "state of nudity."

April Tompkins is a certified peace officer who, after training to work under cover, was hired as a dancer at Baby Dolls. She testified that the manager told her that after the first dance, the dancer's top must come off. The dancers were supposed to wear "pasties" to cover the areola, but some dancers did not always wear them. Tompkins said it was common for some of the dancers in the club to expose their areolas. She also testified that the dancers "constantly" engaged in simulated sexual activities. In addition to doing lap dances, she described the "dollar dance" during which the dancer would "grind in their lap, rub [herself] in their face." Reiterating the manager of Baby Dolls' explanation about why the patrons were there, Tompkins said, "They aren't there to watch you dance. They are there to watch you go up on the stage and shake it."

Milly Reese, a Baby Dolls dancer who was also arrested the same night as Appellant, testified for the prosecution. She had previously been arrested for dancing at a club in Galveston without obtaining an employee's permit. She testified that her bosses at Baby Dolls told her she

did not need a permit. There were times when she and other dancers did not wear pasties. She said that she and all the dancers did movements considered to be simulated sexual activity. Reese said that she had several conversations with other dancers, including Appellant, about the need to get an employee permit. She said everyone agreed that they needed to get one.

Appellant testified that the management at Baby Dolls insisted the employees did not need a permit. She tried to find out if they needed a permit but was not able to get any information. She explained that the outfits she wore, and her dancing, remained the same throughout the years. She said the sheriff's office told her she did not need a permit unless she worked in a club where dancers were fully nude. She stated that officers came into the club frequently and she thought that if the dancers needed a permit, the officers would be enforcing that requirement. She admitted that she was an employee of Baby Dolls on the night of her arrest and that she knew she did not have an employee license. She said she always wore pasties and she only saw the areolas of other dancers when they were exposed accidentally. She also said that she had been fined by management once or twice for accidentally showing too much.

Thus, the record shows that on August 20, 2011, Baby Dolls was a club that employed dancers who wore bikini type clothing. The dancers frequently took off their tops and, at times, the areolas of the dancers were not covered. Additionally, at times, their buttocks were not adequately covered. Finally, while dancing, the dancers engaged in simulated sexual activities. Viewing the evidence in the light most favorable to the prosecution, the jury could have found that Baby Dolls was a sexually oriented business on August 20, 2011. *See* TEX. LOC. GOV'T CODE ANN. § 243.002 (West 2005); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. We overrule Appellant's fifth issue.

### *Mens Rea*

The Nacogdoches County Commissioners' Court's sexually oriented business order provides that it is a violation of the order for any person to be employed at a sexually oriented business in certain geographic areas of the county unless the person possesses a valid license issued by the Nacogdoches County Sheriff's Department. The local government code states that a person commits a Class A misdemeanor if she violates a county regulation adopted under Chapter 243. TEX. LOC. GOV'T CODE ANN. § 243.010 (West 2005). However, neither the county order nor the statute mentions the culpable mental state of the employee.

A culpable mental state is required for the order, even though it does not prescribe one, unless the definition of the offense plainly dispenses with any mental element. TEX. PENAL CODE ANN. § 6.02(b) (West 2011); *Aguirre v. State*, 22 S.W.3d 463, 470 (Tex. Crim. App. 1999). Further, the silence of a statute about whether a culpable mental state is an element of the offense leaves a presumption that one is. *Aguirre*, 22 S.W.3d at 472. Accordingly, for purposes of our discussion, we will assume that the order does not dispense with the culpable mental state element. *See also Thompson*, 44 S.W.3d at 182 (held that municipal ordinance requiring employee of adult cabaret to display a permit upon her person did not dispense with culpable mental state requirement). If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required, intent, knowledge, or recklessness suffices to establish criminal responsibility. TEX. PENAL CODE ANN. § 6.02(c) (West 2011). Here, the information alleged that Appellant committed the crime intentionally, knowingly, or recklessly. The jury charge instructed the jury that they will find Appellant guilty if they determine that she intentionally, knowingly, or recklessly worked at an adult cabaret in Nacogdoches County without first having been issued a valid sexually oriented business employee license.

A person acts intentionally with respect to the nature of her conduct when it is her conscious objective or desire to engage in the conduct. TEX. PENAL CODE ANN. § 6.03(a) (West 2011). A person acts knowingly with respect to the nature of her conduct or to circumstances surrounding her conduct when she is aware of the nature of her conduct or that the circumstances exist. TEX. PENAL CODE ANN. § 6.03(b) (West 2011). Culpable mental state is most commonly grounded upon inferences to be drawn by the factfinder from the attendant circumstances. *Lane v. State*, 763 S.W.2d 785, 787 (Tex. Crim. App. 1989). The jury may infer intent from any facts in evidence that tend to prove the existence of that intent. *Skillern v. State*, 890 S.W.2d 849, 880 (Tex. App.–Austin 1994, pet. ref'd).

Appellant's argument is essentially that she did not know she was required to obtain a license. It is well settled that ignorance of the law is not a defense to its violation. *See Almanza v. State*, 365 S.W.2d 360, 362 (Tex. Crim. App. 1963); *Robledo v. State*, 126 S.W.3d 150, 155 (Tex. App.–Houston [1st Dist.] 2003, no pet.). Further, the jury was entitled to infer that, when she called the sheriff's office asking if she needed to have a permit to work at Baby Dolls, she was told she did not because the sheriff's office was under the impression that Baby Dolls was not operating as a sexually oriented business. The record shows that Baby Dolls was a sexually

10

oriented business and that Appellant was employed there. The jury was entitled to infer that Appellant knew the nature of her surroundings. *See Skillern*, 890 S.W.2d at 880. The dancers, including Appellant, all discussed the license requirement. There was testimony that Appellant had been told they were required to obtain an employee license and Appellant continued to work there without the mandated license. The evidence, when viewed in the light most favorable to the conviction, is sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Appellant intentionally or knowingly worked at a sexually oriented business without first obtaining an employee license from the county. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. We overrule Appellant's fourth issue.

## CONCLUSION

The Nacogdoches County Commissioners' Court's order regulating sexually oriented businesses does not infringe on the First Amendment's right to freedom of speech and the Texas Local Government Code authorizes the county to regulate the conduct of employees of sexually oriented businesses. The evidence is sufficient to support Appellant's conviction for working at a sexually oriented business without an employee permit. However, Appellant's complaint that the application process for obtaining the requisite permit constitutes government overreaching is not yet ripe and therefore we cannot consider that question.

We *affirm* the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered October 16, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

OCTOBER 16, 2013

NO. 12-12-00348-CR

**KRYSTYNA RISHEL REYNOLDS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the County Court at Law

of Nacogdoches County, Texas (Tr.Ct.No. CF1101873)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*