TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00780-CR






Michael Schrader, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0984936, HONORABLE JON WISSER, JUDGE PRESIDING






 After the district court denied his motion to suppress evidence, Michael Schrader
pleaded guilty to possession of less than one gram of cocaine. He was placed on two years
deferred adjudication probation. Schrader contends on appeal by his sole point of error that the
district court erred by denying his motion to suppress. We will affirm the judgment.

 Schrader contends that the court should have suppressed the cocaine because it was
discovered as a result of police enforcement of an unconstitutionally overbroad noise ordinance. 
The disputed ordinance, City of Austin Municipal Code section 10-5-40, provides in relevant part:


(A) It is unlawful for any person operating or controlling a motor vehicle in either
a public or private place within the city to operate any sound amplifier which
is part of, or connected to, any radio, stereo receiver, compact disc player,
cassette tape player, or other similar device in the motor vehicle, in such a
manner that, when operated, it is audible at a distance of 30 feet or, when
operated, causes a person to be aware of the vibration accompanying the
sound at a distance of 30 feet from the source.


(B) The provisions of this section do not apply to:


* * *



 (2) Motor vehicle[s] used for business or political purposes, properly
permitted, which in the normal course of business use sound making
devices; . . . .



Police stopped the car containing passenger Schrader, then 20 years old, and driven by
Christopher Newton, then 18, for violation of this ordinance at 1:19 a.m. on a stretch of William
Cannon Boulevard bounded by two apartment complexes and a shopping center. Beer was in
plain view in the back seat of the car, though both occupants were under the legal drinking age. 
When the men got out of the car and placed their hands behind their heads, an officer smelled
marihuana on Schrader's fingers. A search of the car revealed two bags of marihuana in the
vehicle. The officers arrested both men. A search of Schrader revealed cocaine in Schrader's
sock.

 Before trial, Schrader moved to suppress the cocaine because it was the fruit of an
illegal stop. He contended that, but for the unconstitutionally vague and overbroad noise
ordinance, the police would not have stopped the car and triggered the chain reaction of searches
and seizures that led to the discovery of the cocaine. The district court expressly concluded that
the noise ordinance was neither vague nor overly broad, and denied the motion to suppress. 
Schrader then pleaded guilty, but the court deferred adjudication of guilt and put him on probation
for two years.

 Ordinarily, a defendant seeking to suppress evidence discovered during a traffic
stop challenges the basis of the officers to stop the car. See, e.g., United States v. Cortez, 449
U.S. 411, 417 (1981); Townsend v. State, 813 S.W.2d 181, 185 (Tex. App.--Houston [14th Dist.)
1991, pet. ref'd). The defendant usually challenges whether the law enforcement official had
probable cause to stop the defendant or had specific and articulable facts from which to draw
rational inferences supporting a temporary detention. See id. If the officer's stop of the
defendants was legitimate, then the evidence discovered pursuant to the stop or temporary
detention can be used against the defendant. See Cortez, 449 U.S. at 421-22; see also, 813
S.W.2d at 185. Though Schrader said he did not think that the car radio was too loud, he does
not challenge the conclusion that the police reasonably believed they had witnessed a violation of
the ordinance, thus giving the officer cause to stop Newton's car.

 Instead, Schrader asserts that the sole issue on appeal is whether the car radio
volume ordinance is unconstitutionally overbroad. When faced with a constitutional challenge,
we begin with a presumption of statutory validity, and the burden is upon the challenger to
establish that the statute is unconstitutional. Robinson v. Hill, 507 S.W.2d 521, 524 (Tex. 1974).

 Ordinances restricting noise levels have been upheld as constitutional. See Kovacs
v. Cooper, 336 U.S. 77, 83 (1949); see also Grayned v. City of Rockford, 408 U.S. 104, 115-16
(1972); Reeves v. McConn, 631 F.2d 377, 382 (5th Cir.1980). This power is limited to the
degree that it impinges on individual constitutional rights such as First Amendment freedom from
restraint of speech. See Clark v. State, 665 S.W.2d 476, 482 (Tex. Crim. App. 1984).

 Concern for the protection of First Amendment guarantees is so great that persons
whose own expression is unprotected can challenge the statute on the ground that its overbreadth
prohibits and inhibits protected speech. See New York v. Ferber, 458 U.S. 747, 768-69 (1982). 
This is an exception to the general rule that a party must be affected by the unconstitutional aspect
of a statute in order to challenge its constitutionality. See Broadrick v. Oklahoma, 413 U.S. 601,
610 (U.S. 1973). Even though a statute or ordinance may be constitutionally applied to a
particular defendant's acts or conduct, "that defendant may challenge it on the basis of
overbreadth if it is so drawn as to sweep within its ambit protected speech or expression of other
persons not before the court." Dubuisson v. State, 572 S.W.2d 694, 696 (Tex. Crim. App. 1978)
(citing Doran v. Salem Inn, Inc., 422 U.S. 922, 933 (1975)).

 This exception is itself limited in scope, however. The Supreme Court in
Broadrick wrote that


the plain import of our cases is, at the very least, that facial overbreadth
adjudication is an exception to our traditional rules of practice and that its function,
a limited one at the outset, attenuates as the otherwise unprotected behavior that
it forbids the State to sanction moves from 'pure speech' toward conduct and that
conduct--even if expressive--falls within the scope of otherwise valid criminal laws
that reflect legitimate state interests in maintaining comprehensive controls over
harmful, constitutionally unprotected conduct. Although such laws, if too broadly
worded, may deter protected speech to some unknown extent, there comes a point
where that effect--at best a prediction--cannot, with confidence, justify invalidating
a statute on its face and so prohibiting a State from enforcing the statute against
conduct that is admittedly within its power to proscribe. Cf. Alderman v. United
States, 394 U.S. 165, 174-175 (1969). To put the matter another way, particularly
where conduct and not merely speech is involved, we believe that the overbreadth
of a statute must not only be real, but substantial as well, judged in relation to the
statute's plainly legitimate sweep.



Broadrick, 413 U.S. at 615. If a statute is not substantially overbroad, any overbreadth should
be cured through case-by-case analysis of the fact situations to which it should not apply. Id. at
615-16. The Court was hesitant to sweep away criminal laws that had many constitutional
applications. Id. (citing Cantwell v. Connecticut, 310 U.S. 297, 308-311 (1940)). In Cantwell,
the Court reversed the conviction of a religious proselytizer for common-law breach of the peace,
finding that, though his attack on the Catholic church offended his listeners and made them think
violent thoughts, the First Amendment's protection of his speech prevented conviction absent
more egregious conduct. Id. at 311. The Court noted that the common-law offense of breach of
the peace could also apply to conduct unprotected by the First Amendment and conduct protected
by the First Amendment but subject to some regulation. Id. at 308. Accordingly, the Court
reversed the conviction without abrogating the entire offense, even though the law had been used
to squelch protected First Amendment activity. See id. at 311; see also Broadrick, 413 U.S. at
614.

 We begin by determining whether Schrader can bring this challenge. The
ordinance expressly regulates the operation of a motor vehicle and its sound system; the only
evidence is that Schrader was a passenger and was not "operating or controlling" the car. There
is no intimation that Schrader was cited or prosecuted for any violation of this ordinance; this
conviction is for possession of cocaine, not for violation of the sound ordinance. Nor does he
argue on appeal that the statute was applied to him as a pretext. Instead, he argues that he has
standing on behalf of all persons on whose First Amendment rights this ordinance allegedly
infringes. Though we question Schrader's standing to challenge a noise ordinance while appealing
his conviction for cocaine possession, we will address the merits of his challenge to the
constitutionality of the statute and, therefore, the traffic stop. See Tex. Crim. Proc. Code Ann.
art. 38.23(a) (West Supp. 2000).

 Schrader contends that the sound limitation impinges on constitutional rights in
several ways. He contends that it limits the right of free expression and communication through
music. He complains that the statute is not narrowly tailored with regard to time, place, or
manner. He contends that it will affect others more strongly; for instance, people at tailgate
parties outside of sports events who play talk shows or the game broadcast will be "subject to
arrest and search" even though the activity is compatible for that location and time.

 To analyze a facial challenge to the breadth of a law, we must first determine if the
statute reaches a substantial amount of constitutionally protected conduct. Village of Hoffman
Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 (1982); see also City of Houston
v. Hill, 482 U.S. 451, 458 (1987). A statute will not be invalidated for overbreadth merely
because it is possible to imagine some unconstitutional applications; in other words, "there must
be a realistic danger that the statute itself will significantly compromise recognized First
Amendment protections of parties not before the Court." See Members of City Council v.
Taxpayers for Vincent, 466 U.S. 789, 800-01 (1984). "Because of the wide-reaching effects of
striking down a statute on its face at the request of one whose own conduct may be punished
despite the First Amendment, we have recognized that the overbreadth doctrine is 'strong
medicine' and have employed it with hesitation, and then 'only as a last resort.'" Ferber, 458
U.S. at 769, (quoting Broadrick, 413 U.S. at 613).

 We decline to find that this ordinance covers a substantial amount of First
Amendment activity. Section 10-5-40 attempts to regulate only the volume of the output from the
vehicle. It is utterly neutral regarding content and location, perhaps to a fault. It makes no
distinction whether the sound annoys or disturbs others (or indeed whether it pleases those to
whom it is audible), whether it is made in public or private places, or when it is produced. (1) It
does not require the operator to obtain a permit. (2) The operator of the vehicle is not constrained
by this ordinance from any expression or communication except that it not be audible (or
otherwise cause vibrations) more than thirty feet from the vehicle. (3) Though it is conceivable that
someone wishing to use a car stereo for personal expression might chafe at the volume restriction,
we do not find (particularly in light of the availability of permits for sound systems elsewhere in
the city ordinances) that this ordinance restricts a substantial amount of constitutionally protected
activity. (4)

 Schrader was not arrested, charged, or convicted based on the violation of the
ordinance; indeed, it is not clear that the ordinance could have been applied to a passenger in a
vehicle like Schrader. Regardless, there is no evidence that either driver or passenger were
attempting to communicate to anyone outside their car with their listening choice. Schrader seeks
protection, not for his right to speak or from the intent of the ordinance, but from the
consequences of his unlawful possession of alcohol, marihuana, and cocaine. The ordinance may
restrict some First Amendment activity, but it may also reduce one form of public unrest--road
rage. Traffic, frustration with traffic, passionate opinions regarding music and politics, and ever-more powerful vehicle audio sound systems create the need for some regulation of the sphere in
which drivers may impose their listening preferences. (5) Though this ordinance may not be
perfectly drafted, we are not persuaded to strike it down at the behest of a defendant complaining,
not of restraint of speech, but that a restraint on the volume of his friend's non-speech led to the
discovery of illegal possession of alcohol, marihuana, and cocaine.

 We overrule the point of error and affirm the refusal to suppress evidence and the
order deferring adjudication.



 
 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: August 31, 2000

Do Not Publish

1. Practically, the effect may be a variation of the tree-falling-in-the-forest adage--if no one is
around to complain, is it "audible" and if no one complains, will it be enforced?
2. The ordinance is clearly intended to govern use of a personal stereos in vehicles; as noted
above, the City of Austin has a separate ordinance governing the permit process for sound trucks
more typically connected with political/religious speech. See Austin, Tex., Code of Ordinances,
§ 10-5-27(C).
3. Schrader's concern for football tailgaters is somewhat misplaced. Though many may come
within the ambit of the noise ordinance, other conditions, such as the illegal possession of alcohol
or marihuana, must exist to trigger the search of their vehicles.
4. In no way should this holding be taken as a wholesale endorsement of this ordinance. Nor
should it be used to deter the City of Austin from amending the ordinance to trim away any of its
perceived overreaching aspects.
5. Indeed, we take judicial notice that the conflicts these passions and frustrations cause often
manifest themselves within individual vehicles; we do not propose that the city regulate those
conflicts, but recognize the public good flowing from reduction of such conflicts among
anonymous strangers bound together by slow traffic.


58
U.S. at 769, (quoting Broadrick, 413 U.S. at 613).

 We decline to find that this ordinance covers a substantial amount of First
Amendment activity. Section 10-5-40 attempts to regulate only the volume of the output from the
vehicle. It is utterly neutral regarding content and location, perhaps to a fault. It makes no
distinction whether the sound annoys or disturbs others (or indeed whether it pleases those to
whom it is audible), whether it is made in public or private places, or when it is produced. (1) It
does not require the operator to obtain a permit. (2) The operator of the vehicle is not constrained
by this ordinance from any expression or communication except that it not be audible (or
otherwise cause vibrations) more than thirty feet from the vehicle. (3) Though it is conceivable that
someone wishing to use a car stereo for personal expression might chafe at the volume restriction,
we do not find (particularly in light of the availability of permits for sound systems elsewhere in
the city ordinances) that this ordinance restricts a substantial amount of constitutionally protected
activity. (4)

 Schrader was not arrested, charged, or convicted based on the violation of the
ordinance; indeed, it is not clear that the ordinance could have been applied to a passenger in a
vehicle like Schrader. Regardless, there is no evidence that either driver or passenger were
attempting to communicate to anyone outside their car with their listening choice. Schrader seeks
protection, not for his right to speak or from the intent of the ordinance, but from the
consequences of his unlawful possession of alcohol, marihuana, and cocaine. The ordinance may
restrict some First Amendment activity, but it may also reduce one form of public unrest--road
rage. Traffic, frustration with traffic, passionate opinions regarding music and politics, and ever-more powerful vehicle audio sound systems create the need for some regulation of the sphere in
which drivers may impose their listening preferences. (5) Though this ordinance may not be
perfectly drafted, we are not persuaded to strike it down at the behest of a defendant complaining,
not of restraint of speech, but that a restraint on t